UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN YANG,<br><br>                    Plaintiff,<br><br>       - against -<br><br>MIC NETWORK, INC.,<br><br>                    Defendant. | Civil Action No. 18-cv-07628 (AJN) |

**DEFENDANT MIC NETWORK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF STEPHEN YANG'S COMPLAINT**

Eleanor M. Lackman
Lindsay R. Edelstein
COWAN, DEBAETS, ABRAHAMS &
SHEPPARD LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
elackman@cdas.com
ledelstein@cdas.com

*Attorneys for Defendant Mic Network, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 2

ARGUMENT ..................................................................................................... 6

    I.     MIC'S USE OF THE SCREENSHOT TO PROVIDE CRITICISM, COMMENTARY, AND NEWS REPORTING IS A FAIR USE ................... 6

         A.     The Purpose and Character of Mic's Use Favors Fair Use ................ 8

         B.     The Nature of the Copyrighted Work Favors Fair Use .................... 12

         C.     The Amount and Substantiality of the Use Favors Fair Use ........... 13

         D.     The Effect of the Use on the Potential Market Favors Fair Use ........ 14

    II.    PLAINTIFF HAS NOT PLEADED ANY FACTS THAT WOULD ENTITLE HIM TO THE ENHANCED DAMAGES REQUESTED IN HIS PRAYER FOR RELIEF ......................................................................... 15

CONCLUSION ................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adjimi v. DLT Entm't Ltd.*,
  97 F. Supp. 3d 512 (S.D.N.Y. 2015)..........................................................................8

*Allen v. WestPoint-Pepperell, Inc.*,
  945 F.2d 40 (2d Cir. 1991).................................................................................3, 6

*Amini Innovation Corp. v. KTY Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011) ..............................................................16

*Arrow Prods., Ltd. v. Weinstein Co. LLC*,
  44 F. Supp. 3d 359 (S.D.N.Y. 2014)....................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................6, 15

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015)...........................................................6, 12, 13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................2, 6, 15

*Bill Graham Archives v. Dorling Kindersley*,
  448 F.3d 605 (2d Cir. 2006)........................................................7, 8, 13, 14

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006)......................................................................11, 12

*Braun v. Client Servs. Inc.*,
  14 F. Supp. 3d 391 (S.D.N.Y. 2014)..................................................................16

*Burnette v. Carothers*,
  192 F.3d 52 (2d Cir. 1999)...................................................................................6

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016)...............................................................12

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).................................................................................*passim*

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013).........................................................................8, 13

*Dhillon v. Does 1-10*,
   No. 13 Civ. 1465, 2014 WL 722592 (N.D. Cal. Feb. 25, 2014) .......................................10, 11

*Fitzgerald v. CBS Broad., Inc.*,
   491 F. Supp. 2d 177 (D. Mass. 2007) ...................................................................................12

*Hosseinzadeh v. Klein*,
   276 F. Supp. 3d 34 (S.D.N.Y. 2017) .......................................................................................9

*Kanongataa v. Am Broad. Companies, Inc.*,
   No. 16 Civ. 7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) .................................7

*Katz v. Chevaldina*,
   No. 12 Civ. 22211, 2014 WL 2815496 (S.D. Fla. June 17, 2014) ..................................10, 11

*Keeling v. Hars*,
   809 F.3d 43 (2d Cir. 2015).......................................................................................................8

*Kelly v. Arriba Soft Corp.*,
   336 F. 3d 811 (9th Cir. 2003) .............................................................................................7, 12

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)......................................................................................................7

*Lebow v. Am. Trans Air, inc.*,
   86 F.3d 661 (7th Cir. 1996) ....................................................................................................16

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*,
   No. 13 Civ. 4664 (TMD), 2014 WL 3368893 (N.D. Ill. July 8, 2014) .................................10

*Mosca v. Yankee Publ'g Inc.*,
   No. 15 Civ. 266 (JDL), 2015 WL 9304738 ...........................................................................15

*McDermott v. Monday Monday, LLC*,
   No. 17 Civ. 9230 (DLC), 2018 WL 1033240 (S.D.N.Y. Feb. 22, 2018) ...............................7

*N. Jersey Media Grp. Inc. v. Pirro*,
   74 F. Supp. 3d 605 (S.D.N.Y. 2015)......................................................................................12

*New Era Pubn'ns Intern., Aps v. Carol Pub. Group*,
   904 F.2d 152 (2d Cir. 1990).....................................................................................................13

*Nunez v. Caribbean Int'l News Corp.*,
   235 F.3d 18 (1st Cir. 2000).................................................................................................10, 13

*Princeton Univ. Press v. Michigan Document Servs., Inc.*,
   99 F.3d 1381 (6th Cir. 1996) (en banc) .................................................................................15

iii

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)..............................................................................................3

*Rudkowski v. Mic Network, Inc.*
    No. 17 Civ. 3647 (DAB), 2018 WL 1801307 (S.D.N.Y. Mar. 23, 2918) ................7

*Sarl Louis Feraud Int'ls v. Viewfinder Inc.*,
    627 F. Supp. 2d 123 (S.D.N.Y. 2008)..............................................................................10

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018)..............................................................................................16

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014)..........................................................................................9, 11

*Synopsys, Inc. v. Atop Tech, Inc.*,
    No. 13 Civ. 02965 (SC), 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................16

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991)..............................................................................................9

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014)..............................................................................................16

**Statutes**

17 U.S.C. § 107(1) ......................................................................................................8, 13, 14

17 U.S.C. § 504 ..................................................................................................................15

17 U.S.C. § 505 ..................................................................................................................17

28 U.S.C. § 1927 ................................................................................................................17

Federal Rule of Civil Procedure 12(b)(6) ....................................................................1, 6

**Other Authorities**

4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.04
    (Matthew Bender rev. ed. 2012) ..................................................................................15

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Mic Network, Inc. ("Mic") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Stephen Yang's ("Plaintiff") complaint dated August 21, 2018 (the "Complaint" or "Cplt.").

## PRELIMINARY STATEMENT

Without due consideration of the facts, Plaintiff has rushed to sue a media outlet for doing what it is supposed to do: report on, discuss, and criticize issues of the day. In this case, the issue centered around a *New York Post* article about Dan Rochkind, a man who swore off dating "hot women" in favor of "merely beautiful women." The article included at the top a photograph of Mr. Rochkind, the rights to which Plaintiff claims he owns, as a means to identify the subject of the article. Not surprisingly, members of the Twitter community heavily criticized the article and Mr. Rochkind, to the point that the criticism became news itself.

Mic, a prominent online news company that caters to the millennial audience, chose to cover the inanity of the article and report on the backlash that the public had lodged against the article and its subjects. Part of Mic's coverage included incidental use of the photograph at issue by virtue of the fact that it appeared right next to the headline of the *Post* article. Nonetheless, the photograph appears cropped and is partially covered by a prominent banner graphic that reads, "Twitter is Skewering the 'New York Post' for a Piece on Why a Man 'Won't Date Hot Women.'" To further illustrate Twitter users' reaction to the original article, Mic also embedded a collection of particularly humorous user-generated tweets, some of which contained cropped portions of the photograph as well, and some of which did not contain the photograph at all.

The case here is yet another instance of a claim brought by the Liebowitz Firm against a media company under the blinkered view that the doctrine of fair use – which is expressly in the

Copyright Act – does not exist.  Or, perhaps, fair use does not matter given that the firm's business model is to collect nuisance-amount settlement payments.  Regardless, as a matter of law, and as can be determined at the pleading stage, Mic's minimal and transformative use of the photograph is fair use and lies at the core of the First Amendment.  Without the use here, Mic would not be able to illustrate its point; Mic's journalistic freedom to comment on the tastelessness of the *Post* piece, and the public reaction thereto, would be seriously hampered.  This is exactly the type of scenario that Congress had in mind when drafting Section 107 of the Copyright Act to codify the doctrine of fair use.  Accordingly, the Complaint should be dismissed with prejudice.

## BACKGROUND

Accepting as true for purposes of this motion all factual allegations contained in the Complaint, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007), the relevant facts are as follows:

Plaintiff is a New York-based photographer who claims that he owns and has registered a photograph of Dan Rochkind at Mel's Burger Bar (the "Photograph"), which was licensed for use in a *New York Post* article entitled "Why I Don't Date Hot Women Anymore," published on April 12, 2017 (the "Post Article").  *See* Cplt. ¶¶ 7, 8.  Plaintiff alleges that Mic, a media company that owns and operates the website www.mic.com, subsequently ran an article on April 13, 2017 entitled "Twitter is Skewering the 'New York Post' for a Piece on Why a Man 'Won't Date Hot Women,'" (the "Mic Article"), wherein Mic featured the Photograph as a banner image and in numerous embedded tweets within the Mic Article without authorization.  *Id.* at ¶¶ 11-12.

The Complaint includes references to the URLs where the Post Article and Mic Article can be found, but – presumably to obscure Mic's clear fair use defense – omits any discussion of

2

the content of the Mic Article, or the context of Mic's use of the Photograph.  Apparently, without any analysis of the differing purposes of the two uses on the face of the Complaint, Plaintiff filed this action asserting that Mic infringed his copyright in the Photograph.  *Id.* at ¶ 1.[1]

The materials the Court is permitted to consider on a motion to dismiss – including the full Post Article and Mic Article – tell a more complete story.[2]  The Photograph was initially published for use in the Post Article directly underneath its aforementioned headline: "Why I Won't Date Hot Women Anymore."   A full screen capture of the Post Article containing the Photograph is attached as Exhibit B to the Lackman Declaration, and following is a screenshot of the *Post*'s use of the Photograph:



---

[1] As discussed *infra* at p. 7, n. 3, Plaintiff is a serial litigant that has filed almost 40 lawsuits over its copyrighted works in the past three years alone.  *See* Declaration of Eleanor M. Lackman ("Lackman Declaration" or "Lackman Decl.") ¶ 2, Ex. A (PACER report printout).

[2] Judicial notice may be taken of documents "incorporated in the complaint by reference[.]" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).  *See also Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000) (court may consider documents that Plaintiff "either possessed or knew about and upon which [he] relied in bringing the suit").

The Post Article identifies Rochkind, a 30-something executive in private equity as "an Upper East Sider with a muscular build and a full head of hair[,]" and the Photograph, used for the purposes of identification, depicts him as he appears.  *See* Lackman Decl., ¶ 3, Ex. B (Post Article).  The Post article also includes photographs of Rochkind with his "merely beautiful" fiancé, as well as other singles navigating New York's dating scene.  *Id.*  Rochkind is extensively quoted in the Post Article, wherein he explains how he chose his fiancé: "I could have [anyone] I wanted . . . [she] is a softer beauty, someone you can take home and cuddle with, and she's very elegant . . . [a]nd she's 5-foot-2, so she can't be a runway model, but I think she's really beautiful and is prettier than anyone I've dated."  *Id.*   Above the headline and Photograph are Facebook, Twitter, Google Plus, Gmail, and URL icons, which facilitate users' "sharing" of the Post Article on, among the other platforms listed, Twitter.  *Id.*

Unsurprisingly, following the Post Article's publication, many Twitter users criticized the article and Rochkind's statements made therein.  To report on a story of interest to its readers – the public's criticism of Rochkind and the Post Article following Rochkind's and others' controversial insights into New York City's dating scene – Mic published its article headlined "Twitter is Skewing the 'New York Post' for a Piece on Why a Man 'Won't Date Hot Women,'" and used a screenshot (the "Screenshot") that included: (1) a portion of the Post Article which included the Post Article's headline; (2) a portion of the text of the Post Article; (3) the Post Article's icons allowing users to share; and (4) a significantly cropped version of the Photograph that was incidentally below the headline in the Post Article.  *See* Lackman Decl., ¶ 4, Ex. C (Mic Article).  The Mic Article's headline even covers the small portion of the Photograph that is visible in the Screenshot.  The following is a screenshot of Mic's use of the Screenshot in the introduction to its article:



To further illustrate its story about the backlash following the Post Article's publication, Mic aggregated a selection of the "skewering" tweets referenced in its headline and embedded them in its story.  *Id.*  Some of these included tweets contained cropped versions of the Photograph alongside the Post Article's headline (placed by the Twitter commentator), while some did not contain the Photograph at all.

The clear purpose of Mic's Article was to identify the Post Article and provide commentary and criticism of the Post Article's subjects.  Indeed, the Mic Article states: "The New York Post published a piece Wednesday titled 'Why I Won't Date Hot Women Anymore,' profiling such a man: an insufferable private equity executive named David Rochkind. The 40-year-old Upper West Side resident humbly told the Post there was a time when he could have anyone he wanted, which meant he always went after the 'hottest girl you could find'… [a]s you

can imagine, Twitter had some harsh words for the Rochkind and some words of advice for [his fiancé]." *Id.*

## ARGUMENT

Rule 12(b)(6) compels dismissal of the Complaint.  The standard for assessing a motion to dismiss requires that the plaintiff plead sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  While a court must "[accept] the allegations contained in the complaint as true and [draw] all reasonable inference in favor of the nonmoving party," *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), a complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 545).  To survive a motion to dismiss, plaintiff's well-pleaded facts must "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

In addition to the well-pleaded "facts stated on the face of the complaint," on a motion to dismiss the Court may consider "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken."  *WestPoint-Pepperell*, 945 F.3d at 44 (citation omitted).

## I.  MIC'S USE OF THE SCREENSHOT TO PROVIDE CRITICISM, COMMENTARY, AND NEWS REPORTING IS A FAIR USE

Due to the importance of protecting the First Amendment right to free speech and expression, the copyright law has built into it certain accommodations, such as the fair use doctrine.  The doctrine effectively "permits unauthorized copying in some circumstances, so as to further 'copyright's very purpose'" of promoting artistic creation.  *Authors Guild v. Google, Inc.*, 804 F.3d 202, 212 (2d Cir. 2015) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)).  Section 107 of the Copyright Act permits the use or reproduction of a

copyrighted work if it is "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research." 17 U.S.C. § 107. *See also Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 608 (2d Cir. 2006). In determining whether a use is fair, courts weigh the following factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Campbell*, 510 U.S. at 577-78. The fair use exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Kelly v. Arriba Soft Corp.*, 336 F. 3d 811, 817 (9th Cir. 2003) (quoting *Dr. Seuss Enters., L.P v. Penguin Books USA, Inc.*, 109 F. 3d 1394, 1399 (9th Cir. 1997)).[3]

Although fair use is an affirmative defense, courts grant dismissal based on this defense where "the facts necessary to establish [fair use] are evident on the face of the complaint."

---

[3] It bears mentioning that Plaintiff's attorney has a history of clogging the courts' dockets by filing strike suits without considering copyright defenses such as fair use, and has been reprimanded for such conduct. In *Rudkowski v. MIC Network, Inc.*, another lawsuit filed against Mic by the Liebowitz Firm, Judge Batts "caution[ed] Plaintiff's attorney . . . [,] a frequent flier in this District[,]" questioned Liebowitz's "business model[,]" and noted various misrepresentations made by Liebowitz. No. 17 Civ. 3647 (DAB), 2018 WL 1801307, at *3 (S.D.N.Y. Mar. 23, 2018). Another case brought by the Liebowitz Firm, *Kanongataa v. Am. Broad. Cos.*, was dismissed at the motion to dismiss stage by Judge Kaplan, because, in part, "no reasonable lawyer with any familiarity with the law of copyright could have thought that the fleeting and minimal uses, in the context of news reporting and social commentary, that these defendants made of tiny portions of the 45-minute [v]ideo was anything but fair." No. 16 Civ. 7382 (LAK), 2017 WL 2684067, at *2 (S.D.N.Y. June 21, 2017). The *Kanongataa* court further suggested that "[t]here may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement." *Id.* The Liebowitz Firm places its clients, and not just defendants, at risk of unnecessary financial loss with its unsound practices. The *Kanongataa* court awarded approximately $120,000 in defendants' legal fees, not against the Liebowitz Firm, but against its client. 2017 WL 4776981, at *3 (S.D.N.Y. Oct. 4, 2017). *See also McDermott v. Monday Monday, LLC*, No. 17 Civ. 9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018) (suit filed by the Liebowitz Law Firm with no investigation into threshold issues held to be "frivolous, unreasonable, or groundless").

*Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (citation omitted).  Here, the Court need only review the Complaint and compare the Post Article and the Mic Article to make a determination as to fair use.  *See Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (citing with approval *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he only two pieces of evidence needed to decide the question of fair use" on a motion to dismiss "are the original version [ ] and the [allegedly infringing work] at issue.")); *Adjimi v. DLT Entm't Ltd.*, 97 F. Supp. 3d 512, 517 (S.D.N.Y. 2015) (noting courts "resolve[] motions to dismiss on fair use grounds . . . by comparing the original work to the alleged [infringement]"); *Arrow Prods., LTD. v. Weinstein Co. LLC*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014) ("All that is necessary for the court to make a determination as to fair use are the two [works] at issue.").

For the reasons set forth below, all four factors weigh in favor of a finding of fair use in this case, and the Court may thus conclude as a matter of law on this motion to dismiss that Mic's challenged use qualifies as a fair use of Plaintiff's work.

### A.  The Purpose and Character of Mic's Use Favors Fair Use

The first factor in the fair use analysis is the purpose and character of the use, particularly whether the secondary use was transformative.  *See* 17 U.S.C. § 107(1).  *See also Keeling v. Hars*, 809 F.3d 43, 53 (2d Cir. 2015) ("[T]he first factor – 'the purpose and nature of the use' – lies at the 'heart of the inquiry' . . . while the other three factors are much less important.") (citation omitted).  The crux of this factor is to determine whether and to what extent the new work is "transformative" – that is, whether the new work "merely 'supersede the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message."  *Campbell*, 510 U.S. at 579.  *See also Bill Graham*, 448 F.3d at 608 ("Most important to the court's analysis of the first factor is

the 'transformative' nature of the work."). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.

The "purpose and character" analysis is to be "guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like." *Campbell*, 510 U.S. at 578-79. *See* 17 U.S.C. § 107 (stating that fair use of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching [ ], scholarship, or research, is not an infringement of copyright"). There is a strong presumption that the first factor favors defendant if the allegedly infringing use is among the illustrative statutory categories of fair use enumerated in § 107. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 42 (S.D.N.Y. 2017).

In this case, the first factor weighs heavily in favor of a finding of fair use. Mic's use of the Screenshot was undeniably for the purposes of news reporting and commentary. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (noting in a fair use analysis that "[d]elivering newsworthy . . . information . . . lies at the core of the First Amendment [and] would be crippled if the news media and similar organizations were limited to 'authorized sources of information'").

The highly transformative nature of the use at issue here is readily apparent upon comparison of the Post Article and the Mic Article. Whereas the Photograph was used in the Post Article in its entirety to identify the individual who was the subject of the article, Mic's use of the Screenshot – which consisted of the Post Article's headline, social media icons, text, and, incidentally, a significantly cropped version of the Photograph – was used to identify and

criticize the Post Article itself and report on the public's reaction to the Post Article's publication.

Courts regularly hold that the use of an image or other work to illustrate the subject of an informative article is transformative news reporting. *See, e.g.*, *Sarl Louis Feraud Int'ls v. Viewfinder Inc.*, 627 F. Supp. 2d 123, 128-29 (S.D.N.Y. 2008) (fashion site's photographs of copyrighted articles was transformative, despite leaving the character of the garments unchanged, because the purpose was to "provide the public with news dispatches from the front lines of the fashion world"); *see also Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21 (1st Cir. 2000) (use of nude photos of a model later named Miss Puerto Rico Universe in a news article about the controversy over whether the photographs were appropriate for someone in plaintiff's position was held a fair use); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 Civ. 4664, 2014 WL 3368893, at *13 (N.D. Ill. July 8, 2014) (use of a copyrighted DVD cover in an article about a legal controversy surrounding the video was "news reporting" and qualified as fair use); *Katz v. Chevaldina*, No. 12 Civ. 22211, 2014 WL 2815496, at *7 (S.D. Fla. June 17, 2014) (use of copyrighted photo of plaintiff in blog posts about plaintiff held a fair use); *Dhillon v. Does 1-10*, No. 13 Civ. 1465, 2014 WL 722592, at *5-6 (N.D. Cal. Feb. 25, 2014) (use of headshot was transformative when used in article criticizing the subject's political views).

In *Katz*, for example, the plaintiff held a copyright in an unflattering, candid photograph of himself sticking out his tongue, which was initially used in an article discussing the possibility of the plaintiff acquiring an interest in an Israeli professional basketball team. The defendant subsequently published the subject photograph on a blog dedicated to criticism of the plaintiff and his business practices. In concluding that the defendant's use of the photograph was fair use as a matter of law, the court opined that "[d]efendant did not use the [p]hoto simply to identify

[p]laintiff, as did the [initial] publication; rather, the record is clear that [d]efendant used it as a means of satirizing and criticizing [p]laintiff."  2014 WL 2815496, at *6.

Similarly, in *Dhillon*, the plaintiff owned the copyright to a headshot of herself which she used in connection with her campaign for political office in the State Assembly. 2014 WL 722592, at *1.  The defendant published the headshot on its website with an article critical of the plaintiff's political views. *See id.* at *6. Finding that the defendant's use of the headshot was transformative, the *Dhillon* court opined: "the defendant used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics. Such a use is precisely what the Copyright Act envisions as a paradigmatic fair use." *Id.* at *5 (citation omitted).

This case is similar to *Katz* and *Dhillon*, where the language used in the Mic Article is directly critical of the subject of the copyrighted work, in stark contrast to the original use of the work – to simply identify the article's subject.  Mic's Screenshot was plainly put in a different context and was used for a different purpose than originally intended.

The last component of the first statutory factor – whether Mic made a commercial use of Plaintiff's copyrighted work – is of little significance in light of the discussion above.  Courts in the Second Circuit generally discount the "commercial" factor where, as here, a defendant makes a transformative use of a copyrighted work for purposes of commentary or news reporting, even if the defendant is a commercial entity.  *See, e.g.*, *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006) ("discount[ing] the secondary commercial nature of the use" where the work was transformative); *Swatch Grp. Mgmt. Servs. Ltd.*, 756 F.3d at 83 (recognizing that "[a]lmost all newspapers, books and magazines are published by commercial enterprises that seek a profit," and nevertheless affirming dismissal on fair use grounds based in part on finding that use was for purposes of news reporting) (citation omitted).

11

### B.  The Nature of the Copyrighted Work Favors Fair Use

The second fair use factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell,* 510 U.S. at 586.  This determination has little effect on the fair use analysis, however; the Second Circuit has acknowledged that this factor "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild*, 804 F.3d at 220.  Nonetheless, it bears mention that this factor also weighs in Mic's favor.

An analysis of the second factor considers "(1) whether the work is expressive or creative, . . . with greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (internal citation omitted).  *See also Kelly*, 336 F.3d at 820 ("Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."). The second prong is easily addressed: there is no dispute that the Photograph here was published prior to Mic's use. *See* Cplt. ¶¶ 8, 11.

As to the first prong, while Plaintiff likely exercised some skill and judgment in capturing the image, the Photograph was "unquestionably taken to document [its] subject[] rather than to serve as [an] art piece[]," making it primarily factual in nature, and tipping this factor in Mic's favor. *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 408 (S.D.N.Y. 2016).  *Cf. N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 620 (S.D.N.Y. 2015) (a photographed event that "just happened" was factual and not creative); *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007) (paparazzi photos were "factual works"; "getting the scoop" on a celebrity "was not a creative process" because plaintiff "had no latitude or

12

control over lighting and location"). *See also New Era Pubn'ns Intern., Aps* v. *Carol Pub.*

*Group*, 904 F.2d 152, 157 (2d Cir. 1990). Given that the Photograph is factual in nature and had

been published prior to Mic's alleged use, the second fair use factor weighs heavily in favor of

fair use.

### C. The Amount and Substantiality of the Use Favors Fair Use

The third fair use factor – "the amount and substantiality of the portion used in relation to

the copyrighted work as a whole," 17 U.S.C. § 107(3) – not only considers quantity, but also

asks whether the "value of the materials used [ ] [is] reasonable in relation to the purpose of the

copying." *Campbell*, 510 U.S. at 586 (internal citation omitted). While a fair use finding is

generally more likely where the copier uses smaller or less important parts of the original, *see*

*Authors Guild*, 804 F.3d at 221, the rule is not as rigid when it comes to photographs. *See Bill*

*Graham*, 448 F.3d at 613 ("[T]he third-factor inquiry must take into account that the extent of

permissible copying varies with the purpose and character of the use.") (internal quotation marks

omitted). Regardless, here, the Screenshot only included a cropped version of the Photograph,

which used only enough of it to show the headline of the Post Article – an important part of the

discussion and adjacent to where the Photograph appeared in the Post Article. *See Cariou*, 714

F.3d at 710 ("The secondary use must be permitted to conjure up at least enough of the original

to fulfill its transformative purpose.") (internal quotations and parentheticals omitted); *Nunez*,

235 F.3d at 24 (the "amount and substantiality of the portion used in relation to the copyrighted

work as a whole" was of little consequence to its fair use analysis because "to copy any less than

that would have made the picture useless to the story"). Mic took no more than was necessary to

accomplish its purpose of news reporting and commentary, and as further discussed below, it is

no substitute for the original. Thus, the Court should find in favor of Mic on this factor.

**D.  The Effect of the Use on the Potential Market Favors Fair Use**

The fourth statutory factor, "the effect of the use upon the potential market or value of the copyrighted work," also weighs in favor of fair use.  17 U.S.C. § 107(4).  Courts look not for theoretical or speculative harm, but for copying of "sufficiently significant portions of the original as to make available a significantly competing substitute." *Authors Guild*, 804 F.3d at 223.  The focus is whether the use would "deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Id.*

The fourth factor also "requires courts to consider . . . 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market.'" *Campbell*, 510 U.S. at 590.  The fourth factor ordinarily weighs in favor of fair use where, as here, the allegedly infringing use is transformative and does not compete with the copyrighted work.  *See Bill Graham*, 448 F.3d at 614-15 (secondary use does not affect the market for the original where it is "transformatively different from their original expressive purpose").

Plaintiff pleads no plausible basis to believe that Mic's use of a cropped version of his Photograph for a transformative purpose caused any harm to the market for licensing or selling the Photograph.  There is no reason to believe that Plaintiff would have licensed the Photograph to Mic for its critical purposes.  Furthermore, Plaintiff makes no mention of any market for the Photograph in the Complaint, much less any usurpation of any market for screenshots anywhere. The Court should therefore find in favor of Mic on this fourth and final factor, hold that Mic's challenged use of the Photograph is fair, and dismiss Plaintiff's copyright infringement claim.

## II.    PLAINTIFF HAS NOT PLEADED ANY FACTS THAT WOULD ENTITLE HIM TO THE ENHANCED DAMAGES REQUESTED IN HIS PRAYER FOR RELIEF

Where infringement is willful, a plaintiff may receive enhanced damages.  17 U.S.C. §

504(c)(2).  Under the facts alleged here, and putting aside *arguendo* the implausibility of the

infringement claim itself given the fair use defense,[4] it is implausible to believe that any

unlawful use of the portion of the Photograph in the manner alleged was "willful" infringement.

The only reference to willfulness in the Complaint is the following:  "Upon information and

belief, the foregoing acts of infringement by Defendant have been willful, intentional, and

purposeful, in disregard of and with indifference to Plaintiff's rights."  Cplt. ¶ 17.  On this basis

alone, Plaintiff demands enhanced damages (*id.* at Prayer for Relief, ¶ 3), including statutory

damages of up to $150,000, an enhancement that is warranted only where the plaintiff pleads and

proves that willfulness exists.  *See* 17 U.S.C. § 504(c)(2).

Such bare-bones pleading is insufficient to state a claim, and the Complaint is otherwise

devoid of any facts that would back up Plaintiff's legal allegations.  *See Iqbal*, 556 U.S. at 678

("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid

of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 545).

Accordingly, in light of Plaintiff's failure to plead sufficient facts to meet the standards of

*Iqbal* and *Twombly*, the claim for enhanced damages should be dismissed.  *See Mosca v. Yankee*

*Publ'g Inc.*, No. 15 Civ. 266, 2015 WL 9304738, at *7-8 (D. Me. Nov. 25, 2015) (granting

---

[4] Even if Plaintiff had pleaded any facts to support its allegations of willfulness, Mic's good faith, reasonable belief that its copying constituted fair use was not so "unreasonable as to bespeak willfulness." *Princeton Univ. Press v. Michigan Document Servs., Inc.,* 99 F.3d 1381, 1392 (6th Cir. 1996) (en banc), *cert. denied*, 520 U.S. 1156 (1997).  *See also* 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.04 (Matthew Bender rev. ed. 2012) ("[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes").

motion to dismiss claim for enhanced damages where plaintiff failed to plead any facts from which one could infer willful infringement), *report and recommendation adopted*, 2015 WL 9305649 (D. Me. Dec. 21, 2015); *Amini Innovation Corp. v. KTY Mktg.*, 768 F. Supp. 2d 1049, 1054-55 (C.D. Cal. 2011) (granting motion to dismiss where plaintiff asserted legal conclusion that defendant has "knowingly, willingly, and/or deliberately infringed, and/or acted in reckless disregard to infringing, [plaintiff's] copyrights" but failed to provide any factual allegations regarding defendant's alleged state of mind). *See also Lebow v. Am. Trans Air, inc.*, 86 F.3d 661, 670 n.11 (7th Cir. 1996) (plaintiff's "vague request for compensatory damages [in addition to reinstatement and back pay] is not supported by any facts alleged in the complaint, and thus it is not sufficient to constitute a claim for legal relief"); *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 398-99 (S.D.N.Y. 2014) (dismissing Fair Credit Reporting Act claim for failure to allege facts in support of willfulness); *Synopsys, Inc. v. Atop Tech, Inc.*, No 13 Civ. 02965, 2013 WL 5770542, at *17 (N.D. Cal. Oct. 24, 2013) (dismissing claim for willful patent infringement where allegations of willfulness amounted to no more than a recitation of that claim's elements).[5]

---

[5] Plaintiff also makes a passing reference to a cause of action for removal or alteration of copyright management information ("CMI"), and prays for relief as a result of same, but fails to plead any facts supporting such a claim.  Cplt., ¶ 1; Prayer for Relief, ¶ 2.  Accordingly, any such claim is not well-pleaded and should form no part of this case. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 204 (2d Cir. 2018) (affirming dismissal of § 1202 claim where complaint contained only "passing reference to CMI"); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (affirming dismissal of CMI claim that "was never adequately alleged").

## **CONCLUSION**

For all of the foregoing reasons, Mic respectfully requests that the Complaint be dismissed in its entirety with prejudice.  In light of the ill-considered representations made in the Complaint, Mic reserves the right to move for recovery of its reasonable attorney's fees pursuant to 17 U.S.C. § 505, and for sanctions pursuant to 28 U.S.C. § 1927 as a deterrent, should the Court dismiss this case.

Respectfully submitted,

Dated: New York, New York
November 1, 2018

COWAN DeBAETS ABRAHAMS
& SHEPPARD LLP

By:      /s/Eleanor M. Lackman
Eleanor M. Lackman
Lindsay R. Edelstein
41 Madison Avenue, 38th Floor
New York, NY 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
elackman@cdas.com
ledelstein@cdas.com

*Attorneys for Mic Network, Inc.*