UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 4 2019

Stephen Yang,

        Plaintiff,

—v—

Mic Network, Inc.,

        Defendant.

18-CV-7628 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff brings this action for copyright infringement alleging unauthorized use of a licensed photograph. Defendant moves to dismiss. For the reasons given below, the motion is GRANTED.

## I. BACKGROUND

The following facts are drawn from the allegations in Plaintiff's First Amended Complaint, which are taken as true at this stage of the litigation, as well attached exhibits and documents incorporated by reference. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (in resolving a motion to dismiss under Rule 12(b)(6), review is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

In April of 2017, Plaintiff took a photograph of Dan Rochkind (the "Photograph"). Dkt. No. 17 ¶ 7. The Photograph was then licensed to the *New York Post*, which ran an article on April 12, 2017 entitled *Why I Don't Date Hot Women Anymore* about Rochkind and his dating life (the "Post Article"). *Id.* ¶ 8; Dkt. No. 17-2. The Post Article featured the Photograph. Dkt. No. 17 ¶ 8. On or about April 13, 2017, Defendant posted an article entitled *Twitter is skewering*

1

*the 'New York Post' for a piece on why a man "won't date hot women"* (the "Mic Article"). Dkt. No. 17-4. The Mic Article includes not the full Photograph, but rather a screenshot of the Post Article, which includes the headline of the Post Article, the author's name and the date, and roughly the top half of the photograph (the "Screenshot"). *Id.*; Dkt. No. 17 ¶¶ 11-12. Defendant did not license the Photograph, nor did it have Plaintiff's permission or consent to publish the Photograph. *Id.* ¶ 13.

On August 21, 2018, Plaintiff brought this suit for copyright infringement. Dkt. No. 1. After Defendant filed a motion to dismiss, Plaintiff filed a First Amended Complaint. Dkt. No. 17. On December 5, 2018, Defendant filed the instant motion to dismiss the amended complaint on the grounds that Defendant's use of the Photograph was protected by the fair use doctrine. Dkt. No. 19.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if plaintiffs cannot "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed," *Twombly*, 550 U.S. at 570. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy,*

*LLC*, 647 F.3d 419, 430 (2d Cir. 2011). When considering a motion to dismiss under Rule 12(b)(6), "a court must accept as true all of the [factual] allegations contained in [the] complaint[.]" *Iqbal*, 556 U.S. at 678. However, the court should not accept legal conclusions as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Fair Use

"[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. To determine whether use of a work is fair, courts consider several factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.*; *see Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). In considering these factors, the "ultimate test of fair use . . . is whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' . . . would be better served by allowing the use than by preventing it." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998)).

Fair use is an affirmative defense, and therefore Defendant bears the burden of showing that a given use is fair. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015). An affirmative defense may be "may be adjudicated" on a motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Accordingly, when "the only two pieces of evidence needed to decide the question

3

of fair use" are "the original version" and the allegedly infringing version, it is proper to decide the issue on a motion to dismiss. *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013); *see also Clark v. Transp. Alts., Inc.*, No. 18-cv-9985 (VM), 2019 WL 1448448, at *2 (S.D.N.Y. Mar. 18, 2019) (dismissing an infringement claim based on fair use defense on a Rule 12(b)(6) motion); *May v. Sony Music Entm't*, No. 18-cv-2238 (LAK), 2019 WL 2450973, at *12 (S.D.N.Y. Feb. 13, 2019) (courts have adjudicated motions to dismiss based on a fair use defense "when discovery would not provide any additional relevant information and all that is necessary for the court to make a determination as to fair use are the two works at issue" (citing cases) (internal quotation marks and brackets omitted)); *Lombardo v. Dr. Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497, 504 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) ("Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue.").

## III. DISCUSSION

Defendant moves to dismiss on the grounds that its use of the Photograph is protected by the fair use doctrine. For the reasons given below, the Court concludes that it is possible to adjudicate this motion based solely on the two works at issue. The Court analyzes each of the fair use factors in turn, while keeping in mind that the purpose of "[t]he fair use doctrine is . . . to protect secondary works that 'add[] value to the original,' that use the original work 'as raw material, transformed in creation of new information, new aesthetics, new insights and understandings.'" *Oyewole v. Ora*, 291 F. Supp. 3d 422, 433 (S.D.N.Y. 2018) (quoting *Castle Rock*, 150 F.3d at 142).

### A. Purpose and Character of Use

The first factor, "purpose and character of use," involves three sub-factors, which involve determining whether the use is: (1) transformative; (2) for commercial purposes; or (3) in bad

4

faith. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477-78 (2d Cir. 2004). However, if the new work is "substantially transformative," the "other factors, including commercialism, are of less significance." *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006) (internal quotation marks and brackets omitted). The Court examines these sub-factors in turn and concludes that even drawing all available inferences in Plaintiff's favor, this factor strongly favors a finding of fair use.

### 1. Defendant's Use of the Photograph Is Transformative

As to whether a secondary use is transformative, "[t]he central purpose of this investigation is to see . . . whether the new work merely supersedes the objects of the original creation . . . or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (internal quotation marks and brackets omitted). "[C]opying from an original for the purpose of criticism or commentary on the original or provision of information about it, tends most clearly to satisfy *Campbell*'s notion of the 'transformative' purpose involved in the analysis of Factor One." *Authors Guild*, 804 F.3d at 215–16 (footnotes omitted). Thus, "[d]isplay of a copyrighted image or video may be transformative where the use serves to illustrate criticism, commentary, or a news story *about* that work." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017). On the other hand, if a photograph is merely used as an "illustrative aid" that "depict[s] the subjects described in [an] article[]," this does not constitute transformative use. *Id.* at 352.

Applying that standard, even drawing all available inferences in Plaintiff's favor, Mic's use of the Photograph was transformative in three ways.

First, it is clear from the face of the Mic Article that it was using the Screenshot to

5

identify the subject of controversy—the Post Article—and to illustrate why the article has been controversial. Using a portion of an original work to identify and inform viewers about the subject of a controversy can constitute transformative use. For example, a "news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about." *Barcroft Media*, LLC, 297 F. Supp. 3d at 352 (citing *Konangataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)). Similarly, "depiction of a controversial photograph" could be fair use as accompaniment to commentary about the controversy or criticism of the photograph. *Id.* (citing *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000)). This is the case here.

The title of the Mic Article, *Twitter is skewering the 'New York Post' for a piece on why a man "won't date hot women,"* immediately informs that the subject is the backlash to the Post Article. In a similar case involving a Post article, the fact that the original photograph was not reproduced "as a standalone image, but as part of [a] composite image that showed the manner in which the Post Article's headline, author byline, and the Photograph were arranged on the Post's website indicates that it is being used to identify the subject as the Post Article itself." *Clark*, 2019 WL 1448448, at *3–4. The Mic Article itself consists in large part of embedded tweets criticizing the Post Article, the way the Post Article presents Rochkind, and Rochkind himself. One of the embedded tweets, commenting on the Photograph, writes "[s]orry ladies but you just lost your chance with Mr. February from my Passably Hot Substitute Teachers calendar." Dkt. 17-4 at 4. This not only pokes fun at Rochkind as he is depicted in the Photograph, but also the idea that his opinions on "hot women" would be reported seriously in the way that the Post has done. Another tweet, commenting on a different photo from the Post Article, states that the

6

photo's "caption is so savagely written[,] this has to be a piece of satire." Dkt. 17-4 at 5. In this context, the Photograph is used "to illustrate what all the fuss is about," *Barcroft Media*, 297 F. Supp. 3d at 352, namely the Post Article and its depiction of Rochkind. This is a different use of the Photograph than the Post's, which was "news reporting on [Rochkind]." Dkt. No. 22 at 10. To the extent that the Photograph was used as part of the composite Screenshot to identify the Post Article itself, it indisputably constitutes a different use than its original purpose.

Second, it is clear from the face of the Mic Article that it does more than just comment on the controversy; it uses the Screenshot as part of its own criticism of the Post Article. In a recent case in which a blog used a composite screenshot of a news article—as here, the composite included the headline of the article, the author byline, and the photograph at issue—to criticize the original article, Judge Marrero held as a matter of law that this use was transformative as the photograph "is no longer just a depiction of a [the original subject] but a sly barb at the [original article's] sloppy journalism." *Clark*, 2019 WL 1448448, at *3. Similarly, the Mic Article mocks the Post's presentation of the subject, using the Screenshot to both identify the target of its criticism and as a basis for criticism. The Screenshot juxtaposes the photograph of an individual whose appearance the article mocks with a headline sincerely proclaiming that this man "won't date hot women," Dkt. 17-4 at 2-4, as an attempt to "emphasize[] the humorous incongruity of the Post's decision to run the Photograph" in the way it did. *Clark*, 2019 WL 1448448, at *3. The Mic Article goes on to criticize the Post Article in a number of other ways, mocking the way the Post refers to Rochkind's fiancée as "merely beautiful" rather than "hot," Dkt. No. 17-4 at 2, and launching jabs at the Post for transmitting Rochkind's self-presentation at face value, *id.* ("The 40-year old Upper West Side resident humbly told the Post there was a time when he could have anyone he wanted, which meant he always went after the 'hottest girl you could

7

find.'"). Accordingly, "the Photograph is no longer just a depiction of [the subject]," but a vehicle for criticizing the Post Article and identifying it as the target of this criticism. *Clark*, 2019 WL 1448448, at *3. This brand of "[m]edia criticism is not the same purpose as the Photograph was originally intended to be used." *Id.* (quoting *Barcroft Media*, 297 F. Supp. 3d at 351-52 (internal quotation marks omitted)). In this manner, Defendant's use "add[ed] something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message." *Id.* (quoting *Campbell*, 510 U.S. at 579 (1994)).

Third, on its face, the Mic Article uses the Photograph to place Rochkind in a harshly negative light, while the original use of the Photograph placed him in a positive, or at least neutral light. "In the context of news reporting and analogous activities" and the "reproduct[ion] [of] a work without alteration . . . [c]ourts often find such uses transformative by emphasizing the altered purpose or context of the work, as evidenced by surrounding commentary or criticism." *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). Accordingly, several courts have held as a matter of law that it is transformative to take a photograph initially used to simply identify someone or show them in a positive light and use it in a critical manner. *See Katz v. Google Inc.*, 802 F.3d 1178, 1182–83 (11th Cir. 2015) (holding that defendant's "use of the Photo was transformative because, in the context of the blog post's surrounding commentary, [defendant] used [plaintiff's] purportedly 'ugly' and 'compromising' appearance to ridicule and satirize his character"); *Weinberg v. Dirty World, LLC*, No. 16-cv-9179 (GW), 2017 WL 5665023, at *5-10, 13 (C.D. Cal. July 27, 2017) (use of photo was transformative in part because "[r]ather than using the photo to merely identify Plaintiff or his wife, as Plaintiff did on her Facebook profile page . . . the entire Post uses the Video Image as part of a direct critique on Plaintiff's wife's appearance, her status as a model, her husband, and

her relationship with her husband."); *Dhillon v. Does 1-10*, No. 13-cv-01465 (SI), 2014 WL 722592, at *3-6 (N.D. Cal. Feb. 25, 2014) (use was transformative when picture was originally taken to depict plaintiff in a positive light, then used "as part of [defendant's] criticism of, and commentary on, the plaintiff's politics"). Even while this use comes closest to the Post's original use of the Photograph—depicting Rochkind—using the Photograph to criticize Rochkind is a reframing of the "meaning[] or message" of the work. *Campbell*, 510 U.S. at 579. In the original, the posed photograph dominates the page, accompanied by text describing Rochkind as having "had no problem snagging the city's most beautiful women" and praising his "muscular build and a full head of hair." Dkt. 17-2 at 2. A reasonable viewer would interpret the Photograph in this context as placing Rochkind in a flattering, or at the very least neutral, light. In sharp contrast, the Screenshot in the Mic Article shrinks the Photograph considerably, and places it alongside text in which this "insufferable private equity executive" is mocked for everything from his appearance to his personality. Dkt. No. 17-4 at 2-6. This use alters the original message of the Photograph, dramatically altering the light in which it is framed and the message it conveys.

None of Plaintiff's arguments to the contrary are availing. It is true that the unauthorized use of a licensed work is not protected solely because the secondary work has a "purpose or message" that "was different from that of the appropriated material." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016). Accordingly, simply reproducing a comedy routine unaltered in a play that is a "dark critique of society" will not constitute fair use if the comedy routine *itself* does not convey that "dark critique." *Id.* at 181. Here, however, the Photograph is *itself* being used to illustrate the controversy around the Post Article, as satirical commentary on the Post's reporting, and to portray Rothkind in a different light. *See Clark,*

9

2019 WL 1448448, at *3. Each of these is a different purpose than the original.

In light of the above, even drawing all available inferences in Plaintiff's favor, it is implausible that Mic's use of the Photograph was not transformative in the three ways described above. Given the importance of this sub-factor, it counts heavily in favor of finding that the use was fair.

### 2. Defendant Used the Photograph for Commercial Benefit

Plaintiff alleges that Defendant is "a for-profit media organization that derives substantial revenues from advertising on [its website]" and that Defendant used the Photograph to generate revenue by driving page views and clicks. Dkt. No. 17 ¶¶ 22, 25. Accordingly, this sub-factor counts against finding fair use. However, when the use of the work was transformative, this factor is of "less significance." *Blanch*, 467 F.3d at 254.

### 3. Drawing All Reasonable Inferences in Plaintiff's Favor, it is Plausible that Defendant Acted in Bad Faith

Because fair use is an affirmative defense, it is Defendant's burden to show that it did not act in bad faith. At this stage, absence of bad faith must therefore be "evident on the face of the complaint." *Kelly-Brown*, 717 F.3d at 308. This is not so here, as viewing Plaintiff's allegations in the light most favorable to Plaintiff, Defendant cut off part of the Photograph, removing the label crediting the work to Plaintiff. Dkt. No. 17 ¶¶ 16-18; Dkt. 17-4 at 2. The intentional removal of a copyright mark can "suggest[] bad faith in defendant's use of plaintiff's work, and militate[] against a finding of fair us." *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992). However, the Second Circuit has cautioned that bad faith is not "itself conclusive of the fair use question, or even of the first factor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004). This sub-factor thus counts somewhat in Plaintiff's favor.

### B. Nature of the Work

Even drawing all available inferences in Plaintiff's favor, the second factor, the nature of the work, does not point strongly in either direction. The Second Circuit has identified two sub-factors to consider: "(1) whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch*, 467 F.3d at 256 (citation omitted).

As to the first sub-factor, the Court agrees with Plaintiff that, while the Photograph is a relatively straightforward depiction of Rochkind, as a posed portrait it "evinces at least a modicum of artfulness, sufficient to designate it a 'creative' (rather than 'factual') work for the purposes of fair use analysis." *Clark*, 2019 WL 1448448, at *4 (citing *Authors Guild*, 804 F.3d at 220). However, while "[t]his classification cuts against a finding of fair use . . . this factor 'has rarely played a significant role in the determination of a fair use dispute.'" *Clark*, 2019 WL 1448448, at *4 (quoting *Authors Guild*, 804 F.3d at 220).

For the second sub-factor, it is evident from the face of the First Amended Complaint that the Photograph was previously published when Defendant used it. Accordingly, the second sub-factor counts in Defendant's favor.

Given the above, even drawing all available inferences in his favor, the second factor counts only slightly in Plaintiff's favor, if at all.

### C. Amount and Substantiality

The third factor points towards a finding of fair use even when drawing all available inferences in Plaintiff's favor. In this factor, a court will consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107. The

11

question is "whether the quantity and value of the materials used[ ] are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710 (quoting *Blanch*, 467 F.3d at 257). The law "does not require that the secondary artist may take no more than is necessary" and "[t]he secondary use must be permitted to conjure up *at least* enough of the original to fulfill its transformative purpose." *Id.* (internal quotation marks and brackets omitted). And if copying the original "any less would [make] the picture useless to the story[,]" the substantiality of the copying is "of little consequence." *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. 2000) (citing *Amsinck v. Columbia Pictures Indus., Inc.*, 862 F.Supp. 1044, 1050 (S.D.N.Y. 1994)).

Here, Defendant used a significantly cropped version of the Photograph as part of a Screenshot including the Post Article's headline. Dkt. 17-4 at 2. Even drawing all available inferences in Plaintiff's favor, it is implausible that this was not a reasonable use of the Photograph to achieve the purpose of both identifying the object of controversy and satirizing the Post Article and Rochkind. *See Cariou*, 714 F.3d at 710.

Plaintiff offers a number of alternatives that he claims would have been less infringing. Even drawing all reasonable inferences in his favor, none of these are convincing. Plaintiff contends that "Defendant could have published its news story with only the Twitter embeds, showing multiple instances of the Photograph and perfectly illustrating both the Twitter reaction and Mr. Rochkind himself." Dkt No. 22 at 21. However, the secondary work is not required to use only the absolute minimum of the original work necessary. *See Cariou*, 714 F.3d at 710. The use of the Screenshot in the Mic Article's headline identified the Post Article as the subject, and it is not plausible that Mic could have achieved the same effect by burying the lede in embedded tweets.

The other alternatives are similarly implausible. Plaintiff offers that Defendant could have shared or commented on the original story, presumably without writing their own. But it would not be reasonable to infer that this would be a replacement for an entire article and accompanying embedded tweets. Requiring Defendant to "publish[] its news story without any photo whatsoever," Dkt No. 22 at 21, would not be enough to achieve the transformative effect, for the reasons given above. If "Defendant . . . commissioned its own photographer to take an original photo of Rochkind," *id.*, this would fail to produce an image that identifies the Post Article. *See Clark*, 2019 WL 1448448, at *4. Similarly, since Defendant uses the Photograph as part of a Screenshot to identify the Post Article itself, even drawing all available inferences in Plaintiff's favor, it is implausible that licensing the standalone Photograph would serve the same purpose. *Id.* ("The Screenshot showed the Photograph as used in the context of the Post Article" and accordingly "a licensed standalone image would [not] have accomplished the [transformative] purpose").

### D.  Potential Effect of the Use on the Market or Value

Finally, even drawing all available inferences in Plaintiff's favor, the fourth factor counts in Defendant's favor as well. "When a secondary use competes in the rightsholder's market as an effective substitute for the original, it impedes the purpose of copyright to incentivize new creative works by enabling their creators to profit from them." *Capitol Records, LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018). The Second Circuit recently noted that the Supreme Court has described this factor as "undoubtedly the single most important element of fair use." *Id.* (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985)). This factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the

original." *Id.* (quoting *TVEyes*, 883 F.3d at 179). This inquiry "is necessarily intertwined with Factor One; the more the objective of secondary use differs from that of the original, the less likely it will supplant the commercial market for the original." *Id.* (citing *Google Books*, 804 F.3d at 223).

Here, even assuming there were a market in licensing the Photograph and drawing all available inferences in Plaintiff's favor, it is implausible that such a market would be supplanted by Defendant's use. As noted above, the Photograph does not appear on its own in the Mic Article, but as part of a composite Screenshot including the Post Article's headline, the author's byline, and the date and time. In light of the cropped and composite manner in which the Mic Article presents the Photograph, it is implausible that potential purchasers would opt to use the Screenshot rather than license the original Photograph. As in *Clark*, a screenshot of this kind "does not function as an illustration of" Rochkind, "because it also contains the Post Article's headline [and] author byline." *Clark*, 2019 WL 1448448, at *4. Thus, "the Screenshot does not compete against the Photograph in the enterprise of depicting [Rochkind]—there is little risk that someone looking to license or purchase an image of [Rochkind] would select the Screenshot instead of the Photograph, thereby potentially diverting revenue to [Mic] that would have otherwise gone to [Yang]. *Id.* (citing *Capitol Records*, 910 F.3d at 662-63). Indeed, the argument here is even stronger than in *Clark*. Here the Photograph was cropped significantly in size, while in *Clark* the entire original was used. *Id.* at *3. Accordingly, even drawing all available inferences in Plaintiff's favor, it is not plausible the Screenshot would supplant the market—if any—for licensing the Photograph.

### E. The Totality of the Factors

In light of the above factors, even drawing all reasonable inferences in Plaintiff's favor, it is evident on the face of the First Amended Complaint that Defendant's use was fair as a matter

of law. Defendant's use was transformative, its use was reasonable in light of that end, the work was already published, and there is no plausible risk to any market for licensing of the original work. This is sufficient to make out an affirmative defense of fair use at the motion to dismiss stage.

Because Defendant prevails on the issue of fair use, it is unnecessary to reach the question of whether Plaintiff adequately alleged willfulness.

## IV. CONCLUSION

For the reasons given above, the Court hereby GRANTS Defendant's motion to dismiss. Plaintiff has already amended its claims once in response to Defendant's initial motion, which pressed the same arguments as those raised here. Dkt. No. 12. Moreover, Plaintiff has not requested an opportunity to amend nor stated what amendments, if any, he would seek to make. For those reasons, this dismissal is with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). This resolves docket item number 19. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: September 23, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge