**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHEN YANG,

                        Plaintiff,

     - against -

MIC NETWORK, INC.

                    Defendant.

Docket No. 18-cv-7628 (AJN)

ECF CASE

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

POINT I: PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE ...................................... 8

   A.  PLAINTIFF'S CLAIM HAS UNDENIABLE FACTUAL SUPPORT .................................. 9

   B.  PLAINTIFF'S CLAIM IS ALSO SUPPORTED BY APPLICABLE CASELAW ................................ 10

   C.  DEFENDANT'S RELIANCE ON *RUDKOWSKI, CLARK AND KANONGATAA* IS MISPLACED .......... 11

POINT II: PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF COPYRIGHT LAW ................................................................................................ 13

POINT III: PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED ................ 15

   A.  PLAINTIFF'S COUNSEL SERVES A VALUABLE PUBLIC INTEREST BY SEEKING TO STRICTLY ENFORCE FEDERAL COPYRIGHT LAW ................................................................. 16

   B.  PLAINTIFF'S SUIT SEEKS TO ESTABLISH A FULLY FUNCTIONING LICENSING MARKET FOR COMMERCIAL USE OF NEWSWORTHY PHOTOGRAPHS ......................................... 16

POINT IV: AN AWARD OF ATTORNEYS' FEES WILL NOT PROMOTE THE PURPOSE OF THE COPYRIGHT ACT ...................................................................................... 19

   A.  FEE-SHIFTING WILL FRUSTRATE THE PURPOSE OF THE COPYRIGHT ACT BY ENCOURAGING THE UNAUTHORIZED USE OF CONTENT TAKEN FROM SOCIAL MEDIA AND BY REDUCING THE QUANTITY AND VARIETY OF WORKS INTRODUCED TO MARKET ............................... 20

   B.  FEE-SHIFTING IS NOT JUSTIFIED TO COMPENSATE DEFENDANT OR DETER SUITS BROUGHT BY INDIVIDUAL PHOTOGRAPHERS ....................................................................... 20

POINT V: DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED ................ 22

    A.    D<small>EFENDANT</small> H<small>AS</small> F<small>AILED TO</small> S<small>HOW</small> "B<small>AD</small> F<small>AITH</small>" R<small>EQUIRED FOR</small> I<small>MPOSITION OF</small> S<small>ANCTIONS</small> U<small>NDER</small> 18 U.S.C. § 1927 ................................................................................. 22

    B.    D<small>EFENDANT</small> H<small>AS</small> F<small>AILED TO</small> S<small>HOW</small> "B<small>AD</small> F<small>AITH</small>" R<small>EQUIRED FOR</small> I<small>MPOSITION OF</small> S<small>ANCTIONS</small> U<small>NDER THE</small> C<small>OURT'S</small> I<small>NHERENT</small> P<small>OWER</small> .......................................................... 23

<u>POINT VI</u>: DEFENDANT'S LEGAL FEES ARE GROSSLY EXCESSIVE ............................. 24

<u>CONCLUSION</u> ...................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Ariel(UK) Ltd. v. Reuters Grp. PLC*,
   05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007) .................................... 21

*Baker v. Urban Outfitters, Inc.*,
   431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d.................................... 7

*Bell v. Taylor*,
   No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014) ........................ 16

*Berry v. Deutsche Bank Trust Co. Am.*,
   632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) ................................................................................ 9

*Bridgeport Music, Inc. v. WB Music Corp.*,
   520 F.3d 588, 593 (6th Cir. 2008).......................................................................................... 19

*Bryant v. Media Right Productions, Inc.*,
   603 F.3d 135, 144 (2d Cir. 2010) ............................................................................................ 8

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*,
   150 F.3d 132, 137 (2d Cir. 1998) ............................................................................................ 9

*Chambers v. Nasco*,
   501 U.S. 32, 45 (1991) ........................................................................................................... 23

*Chicoineau v. Bonnier Corp.*,
   No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) ........................ 18

*DLC Management Corp. v. Town of Hyde Park*,
   163 F.3d 124, 136 (2d Cir. 1998)........................................................................................... 24

*Eisenschiml v. Fawcett Publications, Inc.*,
   246 F.2d 598, 604 (7th Cir. 1957).......................................................................................... 13

*Encyclopedia Britannica Educational Corp. v. Crooks*,
   542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982) ....................................................................... 14

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 361 (1991) ......................................................................................................... 9

*Ferdman v. CBS Interactive Inc.*,
   342 F. Supp. 3d 515 (S.D.N.Y. 2018).................................................................................... 19

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517,535 n.19 (1994) ............................................................. 7

*Gattoni v. Tibi, LLC*,
    254 F. Supp. 3d 659 (S.D.N.Y. 2017) .................................................. 19

*Goodman v. Universal Beauty Prod. Inc.*,
    No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018) ......... 18

*Hallfordv. Fox Entm't Grp., Inc.*,
    12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) ............. 9

*Hirsch v. Complex Media, Inc.*,
    No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018) ....... 19

*Janik v. SMG Media, Inc.*,
    No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) ......... 17

*Kanongataa v. Am. Broad. Companies, Inc.*,
    No. 16-CV-7382 (LAK), 2017 WL 4776981, at *1 (S.D.N.Y. Oct. 4, 2017) ......... 11

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996, 1011 (2d Cir. 1995) ......................................................... 7

*Konangataa v. Am. Broadcastingcompanies, Inc.*,
    No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) ....... 11

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
    140 F.3d 70, 75 (1st Cir. 1998) .......................................................... 13

*Malibu Media, LLC v. Doe*,
    No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ........ 18

*Matthew Bender & Co. v. West Publ'g Co.*,
    240 F.3d 116, 122 (2d Cir. 2001) ...................................................... 7, 8

*Miller v. Facebook, Inc.*,
    l0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) ............ 14

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
    55 F.3d 34, 38 (2d Cir.1995) ............................................................. 22

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
    No. C-12-4601 EMC, 2014 WL ......................................................... 17

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
  198 F.3d 840, 842-43 (11th Cir. 1999) ................................................................. 13

*Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*,
  264 F.3d 622, 639-40 (6th Cir. 2011) ................................................................... 13

*Myeress v. BuzzFeed Inc.*,
  No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019) ......... 19

*Neitzke v. Williams*,
  490 U.S. 319,325 (1989) ......................................................................................... 9

*Norbay Music, Inc. v. King Records, Inc.*,
  249 F. Supp. 285, 289 (S.D.N.Y. 1966) ................................................................. 14

*Novelty Textile Inc. v. Wetseal Inc.*,
  2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014) ............................................ 17

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986) ................................................................................. 22

*Otto v. Hearst Commc'ns, Inc.*,
  345 F. Supp. 3d 412 (S.D.N.Y. 2018) .................................................................... 18

*Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*,
  96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004) ..................... 9

*Psihoyos v. John Wiley & Sons, Inc.*,
  11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013) *reconsideration
  denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013) ............. 21

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir.2000) ....................................................................................... 22

*Sakon v. Andreo*,
  119 F.3d 109, 114 (2d Cir.1997) ............................................................................ 24

*Sands v. CBS Interactive, Inc.*,
  18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) ....................... 18

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
  194 F.3d 323, 338 (2d Cir. 1999) ........................................................................... 24

*Silberstein v. Fox Entm 't Grp., Inc.*,
  536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) .............................................................. 8

*Torah Safi Ltd. v. Drosnin*,
  00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001) ........................................... 15

*Torah Soft Ltd. v. Drosnin*,
  224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) .............................................................................. 23

*United States v. International Bhd. of Teamsters*,
  948 F.2d 1338, 1345 (2d Cir. 1991) ....................................................................................... 24

*Viva Video, Inc. v. Cabrera*,
  9 F. App'x 77, 80 (2d Cir. 2001) .............................................................................................. 8

STATUTES

17 U.S.C. § 505 ........................................................................................................................ 7
18 U.S.C. § 1927 ...................................................................................................................... 22

TREATISES

Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] .................. 7

## <u>INTRODUCTION</u>

Plaintiff Stephen Yang ("Plaintiff" or "Yang"), via counsel, respectfully submits this memorandum of law in opposition to Defendant Mic Network, Inc.'s Motion for Attorneys' Fees and Sanctions. Defendant's attorney fee application should be denied in its entirety because Plaintiff's claim is objectively reasonable, raises novel and unsettled questions that help clearly demarcate the boundaries of copyright use in the digital age, and is properly motivated. Accordingly, fee-shifting will not further the purposes of the Copyright Act.

With respect to the facts, Defendant cannot dispute that Plaintiff's claim is factually cognizable.

<u>First</u>, there is no dispute that Defendant expropriated Plaintiff's Photograph from Yang's authorized licensee, the New York Post, and republished it on a commercial platform without Yang's permission. Such conduct exposes Mic Network to objectively reasonable litigation regardless of whether the Court ultimately found the use privileged under the fair use doctrine.

<u>Second</u>, there is nothing in the Court's opinion which suggests that Yang's claim is frivolous or that the fair use determination was somehow obvious. The Court's analysis of the first and fourth factors presented "close-calls." Indeed, the Second Circuit has never found a secondary use transformative simply because the unauthorized user created a "composite screenshot" consisting of two separate works, one pictorial and the other literary. Moreover, a reasonable jury could find that the original New York Post article was itself satirical and derisive of Dan Rochkind, which would justify a finding that Defendant's use did not qualify as fair use.

<u>Third</u>, the public record shows that scores of other media outlets criticized or commented on the New York Post Article in very much the same manner as Mic Network, but Yang successfully prosecuted those cases to resolution. *See, e,g., Yang v. Onion, Inc.* 17-cv-5411-VEC;

*Yang v. Connected Ventures*, 17-cv-5481-GBD; *Yang v. Evolve Media,* 17-cv-5529-AJN; *Yang v. Ziff Davis*, 17-cv-6628-VSB; *Yang v. Guardian*, 17-cv-6636-GBD; *Yang v. Oath*; 17-cv-6728-VM; *Yang v. Uproxx*, 17-cv-6880-JPO; *Yang v. Someecards*, 17-cv-7405-JFK; *Yang v. Hearst,* 17-cv-7585-VEC.  Certainly, if Yang's consistent and longstanding enforcement of his rights in the Photograph at here were considered frivolous, other courts would have taken notice by now. In short, Plaintiff's lawsuit is objectively reasonable as to the facts pled to support the claim.

With respect to legal support, Plaintiff's complaint relies on a series of cases in this Circuit which hold that under U.S. Copyright law, the news reporting at issue must be about the copyrighted work itself, which in this case is the Photograph.  But Mic Network did not do any news reporting about the Photograph.  It reported on the New York Post Article, which consists of a literary work that is not owned nor authored by Yang.  There is no record evidence that Mic Network even needed the Photograph to comment on the New York Post Article itself.  Mic Network's use of the Photograph was purely gratuitous.

Further, Plaintiff's suit was properly motivated by the need to vindicate the public interest, deter future infringement, and establish a fully functioning licensing market for content expropriated from Yang's authorized licensee.  These are proper causes for the artistic community to litigate.  Indeed, Yang has consistently enforced his rights in federal courts for the past three years and this case marks the first time that his claim was dismissed on the merits. Accordingly, because fee-shifting will be counterproductive to the purpose of the Copyright Act, Defendant's motion should be summarily DENIED.


## **BACKGROUND**


## **Plaintiff Steve Yang**

Yang is a professional photographer and photojournalist who has a well-established career in the business of licensing his photographs for over 24 years. [Am. Cmpl. ¶ 5]

**Defendant Mic Network, Inc.**

Defendant is a for-profit media company that disseminates news content. [Am. Cmpl., ¶¶ 6, 17] Defendant's primary target audience for its news content is Millennials. [Defendant's Memorandum of Law in Support of Its Motion, Dkt # 20 ("Def Memo"), p. 1.] Defendant operates the website www.mic.com (the "Website") which generates substantial revenues from advertising on the Website that is determined, in large part, by the number of page-views or "clicks" the Website receives. [Am. Cmpl. ¶ 22] The "sharing" of Defendant's news stories on Social Media is a substantial driver of page-views and, thus, revenue for Mic. [Am. Cmpl. ¶ 20-22]

**The Photograph of Dan Rochkind**

In or around April, 2017, Yang photographed Dan Rochkind on assignment for the NEW YORK POST for use on its www.nypost.com website. [Am. Cmpl. ¶ 7-8] The Photograph is a posed portrait of Mr. Rochkind sitting at a bar. [Am. Cmpl., Ex. A] Yang created the Photograph for the purposes of news reporting. [Am. Cmpl. ¶ 7-8] The Photograph, titled Yang_Dan Rochkind, 4-12-17, was properly and timely registered with the United States Copyright Office and was given registration number VA 2-055-141, effective June 22, 2017. [Am. Cmpl., Ex. C]

**Initial Publication of the Photograph by NEW YORK POST – April 12, 2017**

On or about April 12, 2107, NEW YORK POST ran an article that featured the Photograph as the article's banner-image on its web edition below the headline, titled Why I Don't Date Hot Women Anymore (the "NY Post article"). [Am. Cmpl. ¶ 8] The NY Post Article included an

authorship credit (also known as a "gutter credit") below the Photograph which clearly identified Yang as the photographer. [*Id*.] The NY Post Article reports an interview and news about Mr. Rochkind. The NEW YORK POST is in the business of publishing news, and paid a fee for the use of the Photograph in its article.

Above the headline to the NY Post Article appears five icons which enable a web visitor to share a hyperlink to the entire article. [Am. Cmpl., Ex. B] By clicking on one of the five icons, a visitor can share the text-based hyperlink to the entire NY Post Article on a user's Facebook, Twitter or Google Plus account. There are also icons that allow a visitor to share the text-based hyperlink with a friend via e-mail or copy the URL into a web browser or text-based document (such as Word). [*Id*.] There is no link on the NY Post Article which permits a visitor to copy the Photograph itself. [*Id*.]

**Defendant's Re-Publication of the Photograph – April 13, 2017**

On or about April 13, 2017, Defendant published an article about the NY Post Article on the Website that featured the Photograph as the banner-image of the article, as well as serval instances of the Photograph in embedded tweets within the body of the article, titled Twitter Is Skewering The New York Post for A Piece on Why Man Won't Date Hot Women. See URL https://mic.com/articles/174065/twitter-is-skewering-the-new-york-post-for-a-piece-on-whyman-won-t-date-hot-women#.qkRoPPMW3 (the "Mic Article"). [Am. Cmpl., ¶ 11-12, Ex. D] The Mic Article reported on the Twitter response surrounding the NY Post Article, and in no way reported on any controversy associated with the Photograph itself. [*Id*.] The Twitter response to the NY Post Article was clearly and fully illustrated by the numerous embedded Tweets within the Mic Article. [*Id*.]

For the banner-image of the Mic Article, Defendant cropped the NY Post Article headline

and banner-image, deliberately capturing a substantial portion of the Photograph. [Am. Cmpl. ¶ 19, Ex. D]  It is important to note that the Photograph was featured in the NY Post Article below the headline, and any capturing of the Photograph by Mic was not merely "incidental" (as repeatedly alleged in Mic's motion), but a clear deliberate choice to expand the cropped image to include the Photograph. [*Id.*] The Photograph was insignificantly cropped, removing the waist and legs of Mr. Rochkind, but was otherwise a full-color reproduction of the image as it appeared in the NY Post Article, keeping the lighting, background (the Photograph's setting in a bar), and Mr. Rochkind's upper-body and face, the primary features of the portrait. [Am. Cmpl., Exs. B and D] In addition to Defendant's use of the Photograph at issue, Defendant used serval instances of the Photograph in embedded tweets within the body of the article, and these embedded tweets are not the subject of this litigation. [Am. Cmpl., Ex. B].

The Photograph was featured as the primary image published on Social Media when a user shared the Mic Article. [Am. Cmpl., ¶ 12, 20, Ex. E] Though the Mic Article itself featured a graphic headline that slightly obscured the Photograph, there was no such graphic obscuring the Photograph when the Mic Article was shared on Social Media. [*Id.*] When a Social Media user "clicks" on the Photograph, as it appears on the user's social media feed when the Article is shared, the user is brought directly to Mic's website, and not the NY Post Article. [Am. Cmpl., ¶ 21]

Mic derives substantial revenues from advertising on the Website that is determined, in large part, by the number of page-views or "clicks" the Website receives. [Am. Cmpl., ¶ 22]. Particularly, in light of said embedded Tweets, the use of the Photograph as the banner and Social Media image was in no way necessary for Mic's news reporting on the Article, but simply an attempt to exploit the Photograph to enhance interest in the article on Social Media and drive

page-views, thereby generating revenue for Mic. [Am. Cmpl., ¶ 24-25]

Commercial advertisements are visible on the face of the Mic Article in which the Photograph is prominently displayed. [Am. Cmpl., Ex. D] Yang was not credited as the author of the Photograph in the Mic Article. [Id.]

### Defendant's Willful Conduct and Lack of Authorization

As a sophisticated media company, in the business of publishing copyright-protected content, Mic was aware of the gutter credit on the NY Post Article, and Mic understood the gutter credit on the NY Post Article indicated that the Photograph was owned by Yang. [Am. Cmpl., ¶ 17] Defendant did not seek Yang's permission to publish the Photograph. [Am. Cmpl., ¶ 13, 15] Yang never granted Defendant authorization to copy the Photograph or distribute copies of his registered work to the public. [Id.] Prior to publishing the Photograph, there was no communication between Yang and Defendant. [Id.] Mic did not obtain the Photograph for use in the Mic Article by embedding or otherwise using the five icons at the top of NY Post Article which enable a web visitor to share a hyperlink to the entire article [Am. Cmpl., Exs. B and D] Mic did not simply share or retweet the Article and Photograph through its Facebook, Twitter or other Social Media. [*Id.*]

Instead of using the icons on the NY Post Article to share and comment on the Article through Social Media or contacting Yang for authorization, Defendant nevertheless chose to crop the Photograph from the NY Post Article, and post the Photograph without permission as the banner-image of the Mic Article. These actions were implemented with full knowledge of Yang's rights in the Photograph and in a brazen attempt to exploit the Photograph for monetary gain by increasing Millennial's interest in the Mic Article on Social Media.

# **LEGAL STANDARD**

Section 505 of the Copyright Act states that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party I as part of the costs.

17 U.S.C. § 505.

As the plain text of the statute makes clear, "[a]n award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995)). The touchstone consideration in the awarding of fees or costs under § 505 is whether doing so furthers the purposes of the Copyright Act. *See Matthew Bender & Co. v. W Pub. Co.*, 240 F.3d 116, 124-25 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,535 n.19 (1994)); *see also* Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . .")

In *Fogerty*, the Supreme Court cautioned that "[t]here is no precise rule or formula for making [attorneys' fees] determinations," but nonetheless identified "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as relevant factors. *Fogerty*, 510 U.S. at 534 n.19; s*ee also Matthew Bender & Co.*, 240 F.3d at 21 (applying the *Fogerty* factors).

## ARGUMENT

## POINT I:     PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE

"[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). The Second Circuit accords the objective reasonableness factor "substantial weight" in determinations whether to award attorneys' fees. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). The "emphasis on objective reasonableness is firmly rooted in *Fogerty's* admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co.*, 240 F.3d at 122 (citing *Fogerty*, 510 U.S. at 534 n.19). As such, awards of attorneys' fees under § 505 are not justified where a litigant's copyright claims are deemed objectively reasonable. *Id.* (reversing award of attorneys' fees on grounds that the legal position asserted was objectively reasonable).[1]

Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) ("the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable") (quoting *Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96-cv-4126 (RWS), 2004 WL

---

[1] *See also Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998) (vacating award of fees because, inter alia, losing party's claims were objectively reasonable); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable); *EMI Catalogue P'ship v. CBS/Fox Co.*, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award).

728878, at *3 (S.D.N.Y. Apr. 6, 2004)).[2] The "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (citation, quotation marks, and ellipsis omitted).

Here, Plaintiff has advanced an objectively reasonable claim under the Copyright Act because his claim has both factual and legal support.

## A. PLAINTIFF'S CLAIM HAS UNDENIABLE FACTUAL SUPPORT

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

Plaintiff created the Photograph and then licensed it to the New York Post. [Am. Compl. ¶¶ 7-8] Plaintiff then promptly and timely registered the Photograph with U.S. Copyright Office. [Am. Compl., Ex. C] Defendant published its own article which prominently featured Plaintiff's Photograph directly below the infringing article's headline. [Am. Cmpl., ¶¶ 11-12, Ex. D] Defendant did not have Plaintiff's permission or consent to publish any part of the Photograph and did not seek to obtain a license from Plaintiff. [Am. Compl. ¶¶ 13-15]

Here, Defendant does not challenge the facts underlying the elements of Plaintiff's claim. Nor can Defendant dispute that Plaintiff' claim is factually cognizable. The Court's ultimate ruling that Mic Network's secondary use qualified as fair use does not render Plaintiff's primary

---

[2] Similarly, a complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,325 (1989); s*ee also Hallfordv. Fox Entm't Grp., Inc.*, 12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (an argument "is frivolous when there is indisputably absent any factual or legal basis" for it); *Matthew Bender & Co.*, 240 ("an objectively unreasonable argument is not necessarily frivolous or made in bad faith." ).

claim factually incognizable.  Plaintiff's lawsuit is therefore objectively reasonable as the facts pled to support the claim.

**B.    PLAINTIFF'S CLAIM IS ALSO SUPPORTED BY APPLICABLE CASELAW**

Yang's opposition to fair use argument was and is amply supported by caselaw in this Circuit which holds that no transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subjects described in the news article. *See, e.g.*, *Barcroft Media, Ltd. v Coed Media Grp., LLC,* 2017 WL 5032993, at *6 (S.D.N.Y. 2017) ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law."); *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 196 F.Supp. at 404-405 (S.D.N.Y. 2016) (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos v. National Examiner*, 1998 WL 336655, *3 (S.D.N.Y. June 22, 1998) (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Hirsch v. CBS Broad. Inc*., No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *7 (S.D.N.Y. Aug. 4, 2017) ("CBS included the Photo in the Episode, making no changes in it except the apparently non-substantive change of cropping it."); *Otto v. Hearst Commc'ns, Inc*., No. 1:17-CV-4712-GHW, 2018 WL 6510801, at *8 (S.D.N.Y. Dec. 10, 2018) ("Though 'news reporting is a widely-recognized ground for finding fair use under the Copyright Act,' the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District.") (quoting *BWP Media*, 196 F.Supp. at 407).

Here, like the cases in *Otto, Hirsch, Barcroft*, *BWP Media* and *Psihoyos* where fair use was rejected, Defendant used the Photograph to merely illustrate a news story about the subject matter depicted in the image. Defendant concedes that the Mic Article served to "identify and criticize the Post Article itself and report on the public's reaction to the Post's Article's publication." [Def Memo, p. 10]. Thus, Mic's reporting is directed at the subject matter depicted in the Photograph, not the Photograph itself.

## C.   DEFENDANT'S RELIANCE ON *RUDKOWSKI, CLARK AND KANONGATAA* IS MISPLACED

Defendant's motion for attorneys' fees relies heavily on three decisions.

First, Defendant cites to Judge Batt's decision in *Rudkowski v. Mic Network, Inc.*, No. 17 Civ. 3647 (DAB), 2018 WL 1801307 (S.D.N.Y. Mar. 23, 2018), where an infringement claim was dismissed on Rule 12(b)(6) on grounds of de minimis use. However, Defendant conveniently failed to disclose to the Court that Judge Batts DENIED its motion for attorneys' fees and sanctions on many of the same grounds raised herein. *See Rudkowski v. Mic Network*, 1:17-cv-03647-DAB, Dkt. #36, pp. 12-13 (holding that plaintiff's arguments were not objectively unreasonable as they were supported by existing caselaw and denying motions for sanctions due to lack of evidence of bad faith). The case was eventually resolved on appeal. *See Rudkowski v. Mic Network Inc.*, No. 18-2686, 2018 WL 6536114, at *1 (2d Cir. Nov. 2, 2018).

Second, Defendant relies on Judge Kaplan's ruling in *Kanongataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) and *Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 4776981, at *1 (S.D.N.Y. Oct. 4, 2017), where attorneys' fees were awarded to prevailing defendants in a fair use case involving a screenshot of a video. Defendant's reliance on *Kanongataa* is misplaced. To the extent that *Kanongataa* stands for the proposition that

commercial publishers can exploit with impunity screenshots taken from videos posted to the internet, then Plaintiff, and other content creators who are similarly situated, can file suit with the good faith intent of overturning or distinguishing *Kanongataa*. If the *Kanongataa* decision grants publishers the unfettered right to expropriate whatever images it wants from the internet, then the decision ought to be challenged until such time as an alternative view is adopted. *See* Fed.R.Civ. P. 11 (recognizing that attorneys may advance "a good faith argument for an extension, modification or reversal of existing law"); *see also* Rule 3.1 of the Model Rules of Professional Conduct (same).

Third, Defendant's reliance on *Clark v. Transportation Alternatives, Inc.*, 18 Civ. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) is also misplaced. In *Clark*, Judge Marrero held that the defendant had directly criticized the New York Post's use of the Photograph at issue.

> the section of the TransAlt Article that touches upon dockless bikes is specifically about the incongruity of the *Post*'s publication of an article with an illustration that seems to refute its own headline . . . the TransAlt Article focuses on the *Post*'s inapt placement of the Photograph in immediate physical proximity with a headline that the Photograph may contradict. . . TransAlt Article did not have an alternative option for visually expressing the point that the Screenshot drives home by showing that the *Post* placed the *Post* Article's headline and the Photograph right next to each other despite their incongruity

*Clark, 2019 WL 1448448, at *3.* Here, in contrast, Mic Network did not criticize the New York Post's use of the Photograph of Dan Rochkind to illustrate the original article. Rather, Mic Network just criticized Dan Rochkind, the subject matter depicted in the image.

To the extent *Clark* stands for the novel proposition that a "composition screenshot" allows secondary publishers to poach images from the New York Post through a technical process, Yang has a good faith reason to challenge the holding in *Clark* through litigation on the merits. After all, the Second Circuit has never held that a composite screenshot constitutes fair

use. And Yang is prepared to litigate that issue to the Supreme Court, if need be, as there is no justification to allow secondary publishers to perform a technical end-run around Copyright law by expropriating a pictorial work via a composite screenshot.

In sum, Defendant has failed to demonstrate that Plaintiff's claim is objectively unreasonable as to factual or legal support. This *Fogerty* factor strongly weighs against Defendant's request for fees and costs.

**POINT II:  PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF COPYRIGHT LAW**

Litigation of unsettled or novel issues of law should be encouraged because it helps clarify legal rights, thereby promoting the purposes of the Copyright Act. *See Fogerty,* 510 U.S. at 518 (" . . . it is peculiarly important that the law's boundaries be demarcated as clearly as possible.").[3] Accordingly, "cases with claims involving novel or complex issues do not warrant a court in making a finding of objective unreasonableness." *Brown v. Perdue*, 2006 WL 2679936 at *4 (S.D.N.Y. 2006); *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663,666 (S.D.N.Y. 2001) ("Indeed, a court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law."); *Canal+ Image UK*

---

[3] *See also Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 639-40 (6th Cir. 2011) (reversing an award of attorneys fees under 17 U.S.C. § 505 because "at the time [the] litigation was before the district court, the law on certain relevant aspects of [the] lawsuit was unsettled."); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (the interests of the Copyright Act are furthered by "encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works.")  (quoting *Fogerty*, 510 U.S. at 526-27); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (when "close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff"); *Eisenschiml v. Fawcett Publications, Inc.*, 246 F.2d 598, 604 (7th Cir. 1957) (holding that award of attorneys' fees was an abuse of discretion by trial court where case involved "a very close question.")

*Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011) (same); *Belair v. MGA Entm 't, Inc.*, 09-cv-8870 (SAS), 2012 WL 1656969, at *2 (S.D.N.Y. May 10, 2012) (same).[4]

"The advent of social media, and the internet generally, poses a myriad of issues for both copyright holders and those seeking to license or exploit their work." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). "The federal courts have recognized that 'the whole area of social media presents thorny and novel issues with which courts are only now coming to grips.' *Id.* (internal quotation omitted); *see also Higgins v. Koch Dev. Corp.*, 11-cv-81 (RLY) (WGH), 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) ("Postings on Facebook and other social media present a unique challenge for courts, due to their relative novelty and their ability to be shared by or with someone besides the original poster."); *Miller v. Facebook, Inc.*, l 0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) (noting the "slipperiness of enforcing intellectual property rights in a world where creating and dispersing infringing material to the public via social networking websites has become all too easy").[5]

---

[4] *See also Norbay Music, Inc. v. King Records, Inc.*, 249 F. Supp. 285, 289 (S.D.N.Y. 1966) ("The cases reveal that a fee allowance is rarely made where there are unsettled issues of law and fact."); *Encyclopedia Britannica Educational Corp. v. Crooks*, 542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982) ("When faced with novel, unsettled, or complex problems in copyright cases, courts have refused to award attorneys' fees…" (citations omitted)).

[5] "Beyond the courts, academics and practitioners are similarly coming to terms with the implications of social media and traditional copyright law." *Agence France Presse*, 2015 WL 13021413, at *4 (citing Rebecca Haas, "Twitter: New Challenges to Copyright Law in the Internet Age," 10 J. Marshall Rev. Intell. Prop. L. 231, 248 (2010) (anticipating the challenges of enforcing copyright through media like twitter); Kirsten M. Koepsel, "Social Networks and the Uneasy Relationship with Copyright Law," Md. B.J., November/December 2012, at 20, 27 (advising practitioners on how to advise clients with social media and copyright concerns). In the context of the social media revolution, it is "all the more important that litigants be encouraged to test objectively reasonable legal theories in order to better develop the jurisprudential landscape. This weighs strongly against the awarding of attorneys' fees." *Id.*

Here, the case at bar asks whether a composite screenshot, consisting of both a pictorial work and literary work) extracted from an on-line article published to the New York Post constitutes fair use under the Copyright Act where there is no controversy surrounding the actual copyrighted work at issue (i.e, the Photograph) and no commentary or criticism directed at the Photograph itself (as opposed to the subject matter depicted in the Photograph). This is a novel and unsettled legal issue in the context of commercial news reporting, the adjudication of which helps further define the contours of copyright law in the digital age. Accordingly, the purposes of the Copyright Act are not furthered by awarding fees and costs pursuant to § 505.

<u>**POINT III**</u>:    **PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED**

Plaintiff's motivation for filing suit is also a factor the Court may consider under *Fogerty*, 510 U.S. at 534 n.19. A party is improperly motivated where it asserts claims "not because of [their] inherent merit," but rather because it seeks to "knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain - in this case, the leveraging of a settlement . . ." *Torah Safi Ltd. v. Drosnin*, 00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001).

Here, Plaintiff's claim is properly motivated because this lawsuit seeks to vindicate the public interest by ensuring that the rights of individual photographers are protected against the corporate entities which seek to exploit their property without authorization. Plaintiff's claim is also motivated by a larger effort, spearheaded by Plaintiff's counsel, to establish a fully functioning licensing market for commercial use of images taken from social media.

Further, Defendant's accusations that Plaintiff or his counsel are a "copyright troll" is absurd. Plaintiff is a human being who, by his own creative and tenacious efforts, authored the content which Defendant has sought to brazenly exploit. By Congressional design, federal court is the only venue available for Plaintiff to adjudicate his intellectual property rights and,

therefore, Defendant cannot be heard to complain about the cost of litigation relative to the value of the copyright.

### A. PLAINTIFF'S COUNSEL SERVES A VALUABLE PUBLIC INTEREST BY SEEKING TO STRICTLY ENFORCE FEDERAL COPYRIGHT LAW

"The Copyright Act is intended, not only for a plaintiff to obtain damages for infringement, but to deter the infringers and other potential infringers from infringing on copyrighted works." *Bell v. Taylor*, No. 1:13-CV-00798-TWP, 2014 WL 902573, at \*2 (S.D. Ind. Mar. 7, 2014) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–33, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *F.E.L. Pub'ns, Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir.1985)).

Plaintiff's counsel, Liebowitz Law Firm, PLLC ("LLF"), has filed more than 1100 cases in SDNY and EDNY since January 2016, and more than 1800 cases nationwide. But the firm also represents over 600 clients, thousands of copyright registrations, and tens of thousands of copyrighted works. The number of lawsuits filed by the firm primarily shows that: (a) violation of the Copyright Act via unauthorized use of photographic materials is an epidemic; (b) the Liebowitz Law Firm is vindicating the public interest by ensuring that a proper licensing market exists for the work of photographers; and (c) individual photographers are retaining Liebowitz Law Firm to file federal lawsuits because there is no other means for them to enforce their rights, particularly given the Congressional failure to establish a Copyright Court to help streamline these types of claims.

### B. PLAINTIFF'S SUIT SEEKS TO ESTABLISH A FULLY FUNCTIONING LICENSING MARKET FOR COMMERCIAL USE OF NEWSWORTHY PHOTOGRAPHS

Since the advent of on-line publishing, commercial publishers have developed an unfortunate custom and practice of freely expropriating whatever images they want from the

internet because it is easy to do and unlikely to be detected by law enforcement. This practice has decimated the licensing market for such works as no commercial entity is going to pay for content that can be taken for free. LLF has spearheaded a movement to end this practice by securing legal precedent which upholds copyright protections for newsworthy photographs. Federal courts which rule in photographers' favor will help create a fully functioning market whereby publishers <u>must</u> seek licenses from content generators such as Yang. This *bona fide* cause, which is properly represented by Plaintiff in this case, would be undermined by an award of attorneys' fees to Defendant.

Although Defendant labels Plaintiff's counsel a "copyright troll" (relying on a series of cases issued by a single judge), the number of cases filed, standing alone, cannot possibly support use of this derogatory label. *See Janik v. SMG Media, Inc.*, No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) ("without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik"); see also *Novelty Textile Inc.* v. Wetseal Inc., 2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014) ("Defendants submit evidence that Plaintiff has filed scores of copyright infringement actions in the Central District. Although this fact is consistent with Defendants theory, it is equally consistent with Plaintiff's being a successful design company that needs to protect its intellectual property from widespread infringement.").

In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014), the court rejected use of the "copyright troll" term on similar grounds:

> Wiley seeks to brand Minden with the odious "Copyright Troll" label. Docket No. 84, at 20. The Court finds such hyperbole unhelpful and slightly disingenuous. **Minden is not an entity which exists solely for the purpose of acquiring rights to pursue litigation.** Rather, as the agency agreements in this case show, they are a legitimate third-party

licensing agent with longstanding ties to major photographers. Wiley itself recognizes this by its undisputed business dealings with Minden. That Minden attempted to aggregate the claims of its clients who have allegedly suffered at Wiley's hands is not, on its own, worthy of scorn.

While the burden of defending frivolous and objectively unreasonable litigation may be eleterious to the objectives of the Copyright Act, it is not the purpose of the Copyright Act "to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." Thompkins v. Lil' Joe Records, Inc., No. 02–61161–CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008). **Nor can it be said that the business model of Minden is contrary to the purposes of the Copyright Act; there is value in facilitating the efficient licensing of legitimate copyright holders.**

2014 WL 1724478, at *8 (boldface added).

One of the fundamental elements of the "copyright troll' definition, as applied by the courts, is that copyright trolls sue only to extract settlements, but are not prepared to litigate cases to judgment. See *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does . . . Malibu's motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements.")

Here, in contrast, Plaintiff and the Liebowitz Law Firm is clearly prepared to bring Defendant to final judgment in this case. For example, Liebowitz has obtained judgments of liability for copyright infringement in *Sands v. CBS Interactive, Inc.,* 18-cv-7345 (JSR), 2019 WL 1447014 (S.D.N.Y. March 13, 2019) (summary judgment); *Mango v. BuzzFeed, Inc.,* 356 F. Supp. 3d 368 (S.D.N.Y. 2019) (bench trial); *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018) (summary judgment); *Chicoineau v. Bonnier Corp.,* No. 18-CV-3264 (JSR), 2018 WL 6039387, at *1 (S.D.N.Y. Oct. 16, 2018) (summary judgment); and *Goodman v. Universal Beauty Prod. Inc.,* No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018) (summary judgment).

Liebowitz has also helped develop key judicial precedent in U.S. copyright law through defeating motions to dismiss on Rule 12(b)(6). *See, e.g., Myeress v. BuzzFeed Inc.*, No. 18-CV-2365 (VSB), 2019 WL 1004184, at *1 (S.D.N.Y. Mar. 1, 2019) (denying motion to dismiss based on Safe Harbor defense under DMCA); *Hirsch v. Complex Media, Inc.,* No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018) (denying motion to dismiss based on defenses of fair use and *de minimis* copying); *Hirsch v. CBS Broad. Inc.,* No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *1 (S.D.N.Y. Aug. 4, 2017) (denying motion to dismiss infringement claim and DMCA claim under section 1202(b) on grounds of *de minimis* copying and fair use); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659 (S.D.N.Y. 2017) (denying motion to dismiss DMCA claim for removal of copyright management information); *see also Ferdman v. CBS Interactive Inc.,* 342 F. Supp. 3d 515 (S.D.N.Y. 2018) (dismissing fair use defense on summary judgment with respect to seven photographs).

The rampant theft of intellectual property in the American publishing industry has reached epidemic proportions, as reflected by the number of cases filed by LLF. Liebowitz's copyright enforcement efforts, however controversial they may be on account of their sheer volume, have indisputably had a positive impact on photographic licensing by ensuring that a fully functioning market exists. Clearly, any notion that LLF is filing "strike suits" is belied by the fact that it is prepared to vindicate the public interest by holding infringers accountable for their unlawful conduct.

## POINT IV: AN AWARD OF ATTORNEYS' FEES WILL <u>NOT</u> PROMOTE THE PURPOSE OF THE COPYRIGHT ACT

"It generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008). Here, an award of

fees to Defendant will frustrate the purposes of the Copyright Act by encouraging the

unauthorized use of content taken from the New York Post, Yang's authorized licensee, and by

reducing the quantity and variety of works introduced to market.  Further, fee-shifting is not

warranted to compensate Defendant or deter suits brought by individual photographers.

## A. FEE-SHIFTING WILL FRUSTRATE THE PURPOSE OF THE COPYRIGHT ACT BY ENCOURAGING THE UNAUTHORIZED USE OF CONTENT TAKEN FROM SOCIAL MEDIA AND BY REDUCING THE QUANTITY AND VARIETY OF WORKS INTRODUCED TO MARKET

"The primary objective of copyright is not to reward the labor of authors, but "[t]o

promote the Progress of Science and useful Arts.'' *Feist Publications, Inc. v. Rural Telephone

Service Co.*, 499 U.S. 340, 349-350, 11 S.Ct. 1282, 1290, 113 L.Ed. 2d 328 (1991); see also

*Davis v. Blige*, 505 F.3d 90, 105 (2d Cir. 2007) ("The core purpose of the copyright law is 'to

secure a fair return for an author's creative labor' and thereby 'to stimulate artistic creativity for

the general public good.'") (citations omitted); *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142,

147 (2d Cir. 1984) ("The principle purpose of the [Copyight Act] is to encourage the origination

of creative works by attaching enforceable property rights to them.").

Here, an award of attorneys' fees would only encourage commercial publishers to

expropriate composite screen shots from major media organizations such as the New York Post,

rather than engage in their own newsgathering efforts.  Allowing Defendant to shoplift images

from the New York Post will ultimately diminish the quantity and variety of content available to

the public.  *See Berkla v. Corel Corp.*, 302 F.3d 909, 923 (9th Cir. 2002) ("It would be

inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of

Berkla's product by awarding fees.").

## B. FEE-SHIFTING IS <u>NOT</u> JUSTIFIED TO COMPENSATE DEFENDANT OR DETER SUITS BROUGHT BY INDIVIDUAL PHOTOGRAPHERS

"It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." *Fogerty*, 510 U.S. at 529, 114 S.Ct. 1023 (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960)) (internal quotation marks removed).   Here, Defendant could have settled the case for a reasonable amount prior to motion practice, but instead chose to defend in order to prove a point.  Having persuaded the Court that its expropriation was *fair use*, its point has been proven.  Thus, there is no need to compensate Defendant for its decision to engage in motion practice as it has established legal precedent in favor of corporate publishers, which goes right to the bottom line because Defendant is still free to expropriate content without paying any licensing fees.

Further, there is no need for the Court to deter Plaintiff, or other individual photographers, who has promoted an objectively reasonable legal theory. *See Ariel(UK) Ltd. v. Reuters Grp. PLC*, 05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007) ("The Court recognizes that Defendants incurred considerable expense in defending the copyright claims. Nevertheless, an award of fees and costs would tend to prohibit potential future claimants from litigating questions of fact and law that are not objectively unreasonable and therefore would be contrary to the policies that underlie the Copyright Act."); *see also Psihoyos v. John Wiley & Sons, Inc.*, 11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013) *reconsideration denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013) (declining motion for fees because there was no "need to further deter Defendant's behavior" and concluding "for the same reasons noted above with respect to objective unreasonableness . . . that the compensation and deterrence purposes underlying the Copyright Act are adequately served by the jury's award").

In sum, because the goals of the Copyright Act would not be further served by awarding Defendant attorneys' fees and costs, the motion should be denied.

**POINT V:      DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED**

Defendant also moves for sanctions under 18 U.S.C. § 1927 and the Court's inherent power. Defendant's request is redundant, harassing and lacks any evidentiary support.

**A.      DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER 18 U.S.C. § 1927**

Sanctions imposed under section 1927 require "clear evidence" of bad faith conduct. See *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) (emphasizing the high threshold of improper conduct that must be present in order to justify an award of attorneys' fees pursuant to § 1927). The Second Circuit notes that it has "declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." *Id.* at 1272; see also *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir.1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).

No such high degree of specificity is possible in the present case. Defendant has failed to show that Plaintiff or LLF's complaint is frivolous or motivated by an improper purpose, such as delay or harassment. Nor do the facts of this case satisfy the § 1927 standard set forth in *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir.2000). There, the district court identified eleven different instances of sanctionable behavior by the attorney, including: (1) threatening to "tarnish" the reputation of opposing counsel and subject him to the "legal equivalent of a proctology exam"; (2) publicly accusing the opposing attorney of fraud; (3) threatening to

interfere with other clients of the opposing attorney; (4) threatening to sue opposing counsel individually and seek discovery of his personal finances; and (5) threatening to send the court a letter accusing opposing counsel of criminal conduct. *Id.* at 77–78. The Second Circuit found that sanctions under § 1927 were still not warranted. *Id.* at 82.

It is clear that whatever the Defendant complains of here pales in comparison to the facts in *Revson*. See *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ("The conduct of attorneys here, even if it could be faulted in any respect, would still be far from the threshold that *Revson* establishes for imposing sanctions.").

**B.    DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER THE COURT'S INHERENT POWER**

The federal courts' inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs... ." *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962).  Due to the powerful nature of the courts' inherent power, the Supreme Court has advised that judges should exercise "restraint and discretion" in imposing sanctions. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Sanctions imposed pursuant to the Court's inherent power require a clear showing of bad faith. *Chambers v. Nasco*, 501 U.S. 32, 45 (1991).

In *Chambers*, the Supreme Court set forth the "narrowly defined circumstances" under which federal courts have inherent power to assess attorney's fees against counsel. 501 U.S. at 45.  These include the "willful disobedience of a court order," and when counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.*  The Supreme Court also provided concrete examples of bad faith which would warrant imposition of attorneys' fees against counsel, including acts of fraud upon the Court, abuse of judicial process, delaying or disrupting the litigation, hampering the enforcement of a court order, or in cases where "the

temple of justice has been defiled." *Chambers*, U.S. 501 at 45-46.

Since *Chambers*, the Second Circuit has consistently held that a finding of bad faith is required to justify sanctions under the inherent powers of the court. *See, e.g.*, *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine."); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997) ("we have construed use of ... the court's inherent power to be authorized only when there is a finding of conduct constituting or akin to bad faith"); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (court's sanctions under inherent powers doctrine require "highly specific" finding of bad faith); *Milltex Indus. Corp.,* 55 F.3d at 39-41 (reversing sanction imposed on attorney because there was insufficient evidence of bad faith and because attorney's actions in representing client were neither "entirely without color [of legal legitimacy]" nor undertaken with "improper purposes"); *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (sanctions under inherent powers require finding of bad faith).

Here, once again, Defendant has failed to provide any evidence that Plaintiff or his counsel acted in bad faith. There is no evidence, for example, that Plaintiff committed fraud upon the Court, abused judicial process, delayed or disrupted the litigation, or hampered the enforcement of a court order. Defendant simply disagrees with Plaintiff's legal position on the merits. That's not enough to support a sanctions award. Moreover, Plaintiff's claim was properly motivated.

## POINT VI: DEFENDANT'S LEGAL FEES ARE GROSSLY EXCESSIVE

Defense counsel, Eleanor Lackman, is a sophisticated copyright law practitioner and has filed multiple Rule 12 motions based on fair use. The representation that her law firm spent a

whopping 48.5 hours to do nothing more than file a Rule 12(b)(6) motion based on familiar caselaw is not reliable. At most, the Court should credit defense counsel for 15 hours of time at $350/hr., or $5250.00.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's application for attorneys' fees under 17 U.S.C. § 505, and sanctions, in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz, Esq.
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Stephen Yang*