```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
LUKASZ RUDKOWSKI,
                        Plaintiff,
                                                17 Civ. 3647 (DAB)
                                                MEMORANDUM & ORDER
        v.

MIC NETWORK, INC.,
                        Defendant.
------------------------------------------X
```

DEBORAH A. BATTS, United States District Judge.

On May 5, 2017, Plaintiff Lukasz Rudkowski filed suit against Defendant Mic Network, Inc. for copyright infringement in violation of 17 U.S.C. §§ 106 and 501 based on Defendant's reproduction of a screenshot from a video captured by Plaintiff. The Court granted Defendant's Motion to Dismiss on March 23, 2018. On April 6, 2018, Defendant moved the Court for attorney's fees and sanctions, and Plaintiff moved the Court to reconsider its decision granting the Motion to Dismiss. For the following reasons, the Court DENIES both Motions.

I. BACKGROUND

The Court assumes familiarity with the facts underlying this case as set forth in the Memorandum & Order granting Defendant's Motion to Dismiss ("MTD Op."). In brief, Defendant published a still image (the "Photograph") taken from a video (the "Video") made by Plaintiff on its website.

II.  Motion for Reconsideration

Plaintiff calls his Motion a Motion for Reconsideration but also recites the legal standard for Federal Rule of Civil Procedure 60(b)(1), which provides grounds for vacating a judgment. The Court addresses both standards[1] and rejects Plaintiff's argument.

A. Legal Standard for a Motion for Reconsideration

"The standards governing a motion to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to Local Rule 6.3 are the same." Word v. Croce, No. 00 Civ. 6496, 2001 WL 755394, at * 2 (S.D.N.Y. July 5, 2001). The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSC Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is not one in which a party

---

[1] But see Apex Emp. Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., No. 11 CIV. 9718 (ER), 2017 WL 456466, at *7 (S.D.N.Y. Feb. 1, 2017) ("[W]here a party requests relief under both Rule 60 and Rule 59(e) and the Rule 59(e) request 'merely replicates [the] request under Rule 60(b), and any relief which plaintiffs seek under Rule 59(e) is covered by Rule 60(b), the Court will not separately analyze Rule 59(e).'" (quoting Cueto v. Tucker, No. 12 Civ. 4016 (PAE), 2012 WL 4466632, at *1 n.1 (S.D.N.Y. Sept. 27, 2012))).

2

may reargue "those issues already considered when a party does not like the way the original motion was resolved." In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996). Moreover, the parties "may not address facts, issues or arguments not previously presented to the Court," U.S. Titan v. Guangzhou Zhen Hua Shipping Co., Ltd., 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (citations omitted), because a motion to reconsider should never act "as a substitute for appealing from a final judgment." Bonnie & Co. Fashions, Inc. v. Bankers Tr. Co., 170 F.R.D. 111, 113 (S.D.N.Y. 1997) (citation omitted).

B. Legal Standard for a Rule 60(b)(1) Motion

Federal Rule of Civil Procedure 60(b)(1) provides that a court may relieve a party "from a final judgment, order, or proceeding" because of "mistake, inadvertence, surprise, or excusable neglect." "Mistake" encompasses a court's mistake of law or fact. In re 310 Assocs., 346 F.3d 31, 35 (2d Cir. 2003). Still, Rule 60(b) is a vehicle for relief only in exceptional circumstances. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). As with Rule 59(e), it does not provide a basis for the Court to reconsider issues simply because a party is dissatisfied with the outcome of the case. Serrano v. Smith, No. 05 CIV. 1849 (KTD), 2009 WL 1390868, at *2 (S.D.N.Y. May 13, 2009).

3

C. Application

    1. Whether the Court Overlooked Second Circuit Authority

Plaintiff first argues that the Court overlooked controlling Second Circuit precedent as set forth in <u>Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.</u>, 166 F.3d 65 (2d Cir. 1999). <u>Nihon</u> involved a publisher that brought copyright claims against another company that sold abstracts, or rough translations, of the plaintiff's articles. <u>Id.</u> at 69. Of the defendant's 17,000 abstracts, about one-third were derived from the plaintiff's new sources. <u>Id.</u> The Second Circuit analyzed the district court's findings, following a bench trial, regarding substantial similarity and fair use.

Plaintiff primarily points to two paragraphs of <u>Nihon</u> in support of his argument:

> Copyright law does not admit of simple, bright-line rules. We do not intend to establish any principle that, as a quantitative matter, a work that copies twenty percent of a copyrighted work is never substantially similar. Rarely are the quantitative and qualitative analyses as separate and distilled as they are with respect to the two non-infringing abstracts in this case. It is not possible to determine infringement through a simple word count; <u>the quantitative analysis of two works must always occur in the shadow of their qualitative nature.</u> For example, different quantities of use may be required to support a finding of substantial similarity depending on whether the use is a direct quotation of a fictional work, or a paraphrase of a factual compilation. Where, as here, the copyrighted work contains both original and unprotected elements, a higher quantity of copying is required to support a

4

> finding of substantial similarity than when the infringed work is wholly original.
>
> Defendants also contend that their infringement of Nikkei's copyrights is de minimis because they only infringed a total of 20 articles out of the 90,000 that Nikkei publishes each year. We disagree. It is true that the de minimis infringement of a copyrighted work is not actionable. See Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998). However, Nikkei is entitled to the separate legal protection of each of its articles, and Comline's failure to copy a larger percentage of Nikkei's total works does not insulate it from liability. We also reject defendants' argument that any infringement was de minimis because 20 abstracts represent only a tiny fraction of the 17,000 abstracts they published in 1997. As Learned Hand declared long ago, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936).

Id. at 71-72 (first emphasis added).

The Court's Memorandum & Order granting Defendant's Motion to Dismiss is not in contravention of Nihon. First, the Court did not, as Plaintiff argues, adhere to or set forth "bright line rules" about what percentage of a work needs to be copied in order to constitute infringement. Rather, it held that, based on the facts of this case, that "Defendant's use of Plaintiff's Video is trivial" because it "represents an extremely small fragment of the whole Video." (MTD Op. at 9.) Defendant argues that the Court misapplied TufAmerica, Inc. v. WB Music Corp., 67 F. Supp. 3d 590, 595 (S.D.N.Y. 2014) and Video-Cinema Films, Inc. v. Cable News Network, Inc., No. 98 CIV. 7128 (BSJ), No. 98 CIV. 7129 (BSJ), No. 98

5

CIV. 7130 (BSJ), 2001 WL 1518264, at *7 (S.D.N.Y. Nov. 28, 2001). That the Plaintiff does not like the Court's analogy to a music sampling case, for example, is not a reason to grant a Motion for Reconsideration.

Second, contrary to Plaintiff's argument, Nihon does not stand for the proposition that the qualitative value of the use necessarily outweighs the importance of the quantitative measure. Rather, Nihon requires a balancing of the two components. For example, in Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70 (2d Cir. 1997), the Second Circuit proceeded with a de minimis analysis despite the fact that the defendant had used an exact copy of the plaintiff's artwork in its television program. Id. at 75.[2] Ultimately, the analysis centers on the "'ordinary observer test': whether an average lay observer would overlook any dissimilarities between the works and would conclude that one was copied from the other." Nihon, 166 F.3d at 70. Thus, where

---

[2] The Court also notes that although the Photograph is an exact replica of an instant of the Video, it and the accompanying article tell the story of a white supremacist punching an Antifa protestor. The Video does not highlight this moment and shows it as part of a broader chaotic scene with people marching in the streets and the noises of fireworks in the background. Given the chaotic nature of the scene in the Video and the fact that other people are being assaulted on screen, it is possible for a viewer to miss the significance of the moment captured in the Photograph. Defendant also provides further commentary and background on the white supremacist in the Video and Photograph through its article.

6

the qualitative aspect of the copying is greater, a smaller quantitative amount is required for there to be actionable infringement. See id. at 71. And if the quantitative amount of the work copied is more substantial, then the qualitative aspect need not be as great. See id.

Even if the quantitative component occurs in the shadow of the qualitative component, the Second Circuit has never held, as the Third Circuit has, that "[a] de minimis defense does not apply where the qualitative value of the copying is material." Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 208 (3d Cir. 2002). Thus, Plaintiff cannot point to controlling precedent that the Court overlooked. Plaintiff seeks to invoke the Third Circuit's proclamation simply because he does not like the Court's interpretation and application of Second Circuit case law.

Third, Plaintiff argues in his Reply that the Photograph is entitled to protection as a standalone work because photographs can be copyrighted. In making this argument, he invokes Nihon's ruling that each of the plaintiff's articles was entitled to copyright protection. This is irrelevant, first, because Plaintiff registered the Video rather than any

7

individual frame.³ Furthermore, Nihon is factually inapposite as it involved news articles that were substantially copied rather than a video screenshot. Both the district court and the Second Circuit there analyzed the similarity of each article and abstract that were at issue. See Nihon, 166 F.3d at 70-72.⁴

### 2. Ringgold and Observability

Plaintiff attempts to assert the same arguments on its Motion to Dismiss with respect to Ringgold and related cases. The Court previously addressed these arguments and rejected them. (MTD Op. at 10.) Accordingly, the Court also DENIES Plaintiff's Motion on this basis.

### 3. The Kanongataa Decision

It is Plaintiff's view that Judge Kaplan decided Kanongataa v. Coed Media Group, LLC, 16 Civ. 7472 (LAK), and the related cases based on fair use, rather than just on a de minimis

---

³ It is not entirely clear from the Second Circuit's opinion, but it appears that the plaintiff in Nihon registered a copyright for each of the articles that was the subject of infringement. See Nihon, 166 F.3d at 69 ("In August of 1997, Nikkei began to file periodic applications for United States copyright registration of its news articles.").

⁴ Plaintiff argues, in the alternative, that there is at least an issue of fact for the jury to decide. The Court already addressed this issue in its Motion to Dismiss Memorandum & Order. (MTD Op. at 7-8.)

8

defense. That is not the Court's interpretation of Judge Kaplan's ruling. See Transcript of Oral Argument at 27:4-12, 41:24, Kanongataa v. Am. Broad. Co., Inc., 16 Civ. 7382 (LAK), ECF No. 34.[5] Fair use and de minimis analyses are inherently intertwined. See Ringgold, 126 F.3d at 80. Furthermore, this is another example of Plaintiff attempting to relitigate issues already addressed by the Court simply because he does not like the outcome.

### 4. Registration of Individual Frames

The Court also rejects Plaintiff's Blank Panther-related arguments. The Court is not deciding a hypothetical and perhaps fantastical case that is not before it. Moreover, such arguments do not provide a basis for vacating the Court's prior ruling on a Motion for Reconsideration.

### 5. Damages

The Court notes its error set forth in Footnote 3 of its Memorandum & Order. However, that issue is entirely dicta and is irrelevant to the instant Motion.

---

[5] As Defendant notes, Judge Kaplan did not issue a full written decision, so the ruling is somewhat ambiguous. What is clear is that he viewed the plaintiff's case as entirely without merit.

III. ATTORNEY'S FEES AND/OR SANCTIONS

    A. Legal Standard for Attorney's Fees Under 17 U.S.C. § 505

17 U.S.C. § 505 states that a district court "may . . . award a reasonable attorney's fee to the prevailing party." The statute grants courts "wide latitude to award attorney's fees based on the totality of circumstances in a case." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016). In making a determination as to whether to award fees, district courts should consider several factors, including "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). Courts must "giv[e] substantial weight to the reasonableness of [a party's] litigating position, but also tak[e] into account all other relevant factors." Id. at 1989. A lawsuit or litigation position is objectively reasonable if it has "a reasonable basis in law and fact." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014).

    B. Legal Standard for Attorney's Fees or Sanctions under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and

10

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).

### C. Legal Standard for Attorney's Fees or Sanctions Pursuant to the Court's Inherent Power

"Courts' inherent power to control their own proceedings includes the power to impose appropriate monetary sanctions on counsel or a litigant, including the assessment of attorney's fees." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)). A court may impose sanctions or attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46 (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-259 (1975)). The standard is essentially the same as that for awarding costs and fees pursuant to 28 U.S.C. § 1927. Baker, 431 F. Supp. 2d at 362.

D. Application

Although the Court has dismissed Plaintiff's suit, his arguments are not objectively unreasonable. There is no Second Circuit case law directly addressing screenshots from videos, and little in the lower courts of the Circuit. Even though the Court has rejected it, Plaintiff made a reasonable argument for the extension of cases like Nihon and Ringgold. Despite Judge Kaplan's ruling, there is no indication that Plaintiff acted in bad faith in bringing his suit. Accordingly, the Court, in its discretion, declines to award attorney's fees to Defendant.

The Court is familiar with Attorney Richard Liebowitz's tactics and reputation. He has been labeled a "troll," McDermott v. Monday Monday, LLC, No. 17-CV-9230 (DLC), 2018 WL 1033240, at *3 (S.D.N.Y. Feb. 22, 2018); has had sanctions imposed upon him, including a requirement to do continuing education in ethics and professionalism, Steeger v. JMS Cleaning Servs., LLC, No. 17-CV-8013(DLC), 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018); has been ordered "to show cause why he should not be required to post security for costs as a condition of proceeding further with an action," Reynolds v. Hearst Commc'ns, Inc., No. 17-CV-6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) (collecting cases); and his client was required to pay attorney's fees after bringing a frivolous action. Kanongataa v. Am. Broad. Companies, Inc., No. 16-CV-7382 (LAK), 2017 WL

12

4776981, at *3 (S.D.N.Y. Oct. 4, 2017). Still, considering the merits of this case, sanctions and fees are not appropriate here.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is DENIED and Defendant's Motion for Attorney's Fees and/or Sanctions is DENIED.

SO ORDERED.

DATED:   New York, NY
         Sept. 6, 2018

_Deborah A. Batts_
Deborah A. Batts
United States District Judge

13