UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN YANG

                                Plaintiff,               Case No. 1:18-cv-07628 (AJN)

  - against -

MIC NETWORK, INC.

                                Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'AS MOTION FOR RECONSIDERATION**

Plaintiff Stephen Yang ("Plaintiff") respectfully submits this reply memorandum of law in further support of his motion for reconsideration and/or reargument of the Court's decision to dismiss Plaintiff's complaint as a matter of law.

With Respect to **Point I**, where Plaintiff argues that the Court overlooked that photographs and literary works are separate and distinct intellectual property assets, this is not a novel argument. Indeed, Mic Network concedes that the argument was raised in his opposition brief. [D's Memo, Dkt. # 33, p. 11 of 14]

It is self-evident, as codified in the Copyright Act which defines "pictorial" works as separate works from "literary works," 17 U.S.C. 101, that the Court may not simply mash separate works together for purposes of fair use analysis. The core question is whether Mic Network made fair use of the Photograph itself, which is the registered work at issue, not fair use of the Photograph combined with some accompanying literary work owned by a third party.

1

Defendant's reliance on *Clark v. Transp. Alts., Inc.*, No. 18 Civ. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) is misplaced because the transformative analysis in Clark was based on the concept that the secondary user was criticizing the New York Post's selection of the photograph which illustrated its story. Here, in contract, Mic Network never criticized the New York Post's selection of the Rochkind photo. Instead, Mic Network was criticizing Rochkind himself or was criticizing the New York Post for bothering to do a story about Rochkind.

But what does Mic Network's criticism have anything to do with the Photograph? If Mic Network wanted to display a photograph of Rochkind, then they had to pay for it just like the New York Post paid for it. Mic Network is not entitled to a free pass to republish Yang's protected work just because Mic Network felt like doing an article that criticized Rochkind. Plenty of news articles exist which criticize people, places and things without displaying a photograph at all. If they want the photo, pay for it. This is how Yang makes a living.

With respect to **Point II**, Yang never argued that the *entire* New York Post was a "satirical rag." What he stated was that the specific New York Post article in question is satirical in nature, or can be objectively viewed as satirical or derisive of Rochkind.[1] This changes the entire analysis, in terms of both the first and fourth factors, because the readers who consumed the New York Post article were likely the same readers who consumed the Mic Network article.

Plaintiff respectfully submits that it was not the role of the Court to make that determination, as a jury of Yang's peers could provide different viewpoints as to whether the original New York Post article was itself a "send-up" of Rochkind or those like him. The Court

---

[1] After all the New York Post has many different sections: Breaking News, Political News, Food Reviews, Cartoons, Sports, Tech, Movies, and in this case, Lifestyle. The idea that the New York Post is incapable of posting a satirical or "tongue-in-cheek" piece is absurd. The Post is not the Wall Street Journal, it's the Post. People read it on the subway.

simply presupposed, as a matter of law, that the original New York Post article about Rochkind was a serious, straight-faced piece of journalism that could be taken at "face value." But that's not a question of law. That's a question of fact that should have been reserved for the jury. The Court should do the right thing and allow this case to be tried on the merits.

With respect to **Point III**, there can be no serious dispute that a widespread, secondary market existed for Yang's photograph of Rochkind. There can also be no dispute that Yang had a reasonable expectation to receive fees in that secondary market. The photographs published in New York Post's lifestyle section are often the ones that get the most traction in the secondary downstream market. Yang can prove that fact, if he only had the opottunity to conduct discovery, because many of his lifestyle-related photographs have gone viral, such as photo of Samson, a 28 pound cat.

The NY Post Article on Rochkind went "viral", as it circulated throughout all corners of the media industry. But if the Court's analysis of the fourth factor is allowed to stand, it means that Yang would be relegated to a single licensing fee for his work, which was from the New York Post. How is that just?

Think of the music industry where a single hit song that becomes popular with listeners can make the songwriter a millionaire. The more popular the song, the more money goes to the songwriter. Same with books, plays, movies, or paintings. But because Yang is a photographer, his most popular works are to receive no dividends at all. His photograph of Rochkind just becomes community property, exploited by for-profit media companies like Mic Network to serve their shareholders. The Fair Use doctrine cannot be that broadly cut.

## CONCLUSION

Respectfully, the Court's decision should be reversed and this case should proceed to trial

on the merits.

Dated: October 25, 2019

                                                    LIEBOWITZ LAW FIRM, PLLC

                                                    By: /s/richardliebowitz/
                                                         Richard Liebowitz
                                                  11 Sunrise Plaza, Suite 305
                                                  Valley Stream, NY 11580
                                                  Tel: (516) 233-1660
                                                  rl@LiebowitzLawFirm.com

                                                  *Attorney for Plaintiff*