UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN YANG,<br><br>                      Plaintiff,<br><br>   v.<br><br>MIC NETWORK, INC.,<br><br>                      Defendant. | Case No. 18 Civ. 07628 (AJN) |

**DEFENDANT MIC NETWORK, INC.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

Eleanor M. Lackman
Marissa B. Lewis
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Tel.: (212) 509-3900
Fax: (212) 509-7239
eml@msk.com
mbl@msk.com

*Attorneys for Defendant Mic Network, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. ATTORNEYS' FEES SHOULD BE GRANTED UNDER 17 U.S.C. § 505 ................... 2

    A. Yang Provides No Basis to Find That His Claim is Anything But Objectively Unreasonable. ........................................................................................................ 2

    B. The Transformative Use of a Copyrighted Work is Decidedly Not Actionable. ................ 4

    C. Yang's Claim Admittedly Is Improperly Motivated. ............................................. 5

    D. An Award of Attorneys' Fees Furthers the Purpose of the Copyright Act. ........................ 7

II. MR. LIEBOWITZ SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWERS ................................................................. 8

III. THE AMOUNT OF FEES SOUGHT IS NOT "GROSSLY EXCESSIVE" ................. 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) .................................................................................................... 4

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006) ...................................................................................... 8

*Barcroft Media, Ltd. v Coed Media Grp., LLC*,
  297 F. Supp. 3d 339 (S.D.N.Y. 2017) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 3

*Bill Graham Archives v. Dorling Kindersley*,
  448 F.3d 605 (2d Cir. 2006) ..................................................................................................... 5

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016) ...................................................................................... 4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .................................................................................................................. 7

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ..................................................................................................... 5

*Clark v. Transp. Alts., Inc.*,
  No. 18 Civ. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019) ................................... 5

*Gollomp v. Spitzer*,
  568 F.3d 355 (2d Cir. 2009) ..................................................................................................... 9

*Hirsch v. CBS Broad. Inc.*,
  No. 17 Civ. 1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) ................................... 4

*In re UBS AG Secs. Litig.*,
  No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012),
  *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ................................................................................................... 10

*Janik v. SMG Media, Inc.*,
  No. 16 Civ. 7308 (JGK) (AJP), 2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ........................... 9

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) ......................................................................................................... 2, 3

# TABLE OF AUTHORITIES
# (continued)

Page(s)

*Konangataa v. Am. Broad. Cos., Inc.*,
   No. 16 Civ. 7382 (LAK), 2017 WL 2684067 (S.D.N.Y. June 21, 2017) ............................. 3, 6

*Mango v. BuzzFeed, Inc.*,
   356 F. Supp. 3d 368 (S.D.N.Y. 2019) ................................................................................... 6

*Mantel v. Smash.com, Inc.*,
   No. 19 Civ. 6113 (FPG), Dkt. No. 15 (W.D.N.Y. Oct. 17, 2019) ......................................... 10

*McDermott v. Monday Monday*,
   LLC, No. 17 Civ. 9230 (DLC), 2018 WL 1033240 (S.D.N.Y. Feb. 22, 2018) ............... 5, 6, 9

*Myeress v. BuzzFeed Inc.*,
   No. 18 Civ. 2365 (VSB), 2019 WL 1004184 (S.D.N.Y. Mar. 1, 2019) ................................. 6

*Otto v. Hearst Commc'ns, Inc.*,
   345 F. Supp. 3d 412 (S.D.N.Y. 2018) ................................................................................... 4

*Otto v. Hearst Commc'ns, Inc.*,
   No. 17 Civ. 04712 (GHW) (JLC), Dkt. No. 127 (S.D.N.Y. July 24, 2019) ........................... 6

*Psihoyos v. Nat'l Examiner*,
   No. 97 Civ. 7624 (JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998) ................................ 4

*Revson v. Cinque & Cinque, P.C.*,
   221 F.3d 71 (2d Cir. 2000) .................................................................................................... 9

*Reynolds v. Hearst Commc'ns, Inc.*,
   No. 17 Civ. 6720 (DLC), 2018 WL 1229840 (S.D.N.Y. Mar. 5, 2018) ................................ 6

*Rudkowski v. Mic Network, Inc.*,
   No. 17 Civ. 3647 (DAB), Dkt. No. 34 (S.D.N.Y. May 4, 2018) ........................................... 5

*Sands v. Bauer Media Grp. USA, LLC*,
   No. 17 Civ. 9215 (LAK), 2019 WL 4464672 (S.D.N.Y. Sept. 18, 2019) .............................. 1

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
   No. 98 Civ. 7128 (BJS), 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) ............................... 8

*Yang v. Connected Ventures*,
   No. 17 Civ. 5481 (GBD), Dkt. No. 19 (S.D.N.Y. Oct. 23, 2017) ......................................... 3

*Yang v. Evolve Media, LLC*,
   No. 17 Civ. 5529 (AJN), Dkt. No. 14 (S.D.N.Y. Nov. 7, 2017) ........................................... 3

*Yang v. Guardian News & Media LLC*,
   No. 17 Civ. 6636 (GBD), Dkt No. 14 (S.D.N.Y. Nov. 3, 2017) ........................................... 3

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Yang v. Hearst*,
  No. 17 Civ. 7585 (VEC), Dkt. No. 17 (S.D.N.Y. Jan. 16, 2018) ..............................................4

*Yang v. Oath, Inc.*,
  No. 17 Civ. 6728 (VM), Dkt. No. 27 (S.D.N.Y. Mar. 6, 2018)..................................................4

*Yang v. Onion, Inc.*,
  No. 17 Civ. 5411 (VEC), Dkt. No. 15 (S.D.N.Y. Sept. 27, 2017)..............................................3

*Yang v. Someecards, Inc.*,
  No. 17 Civ. 7405 (JFK), Dkt. No. 17 (S.D.N.Y. Dec. 7, 2017)..................................................4

*Yang v. UPROXX Media, Inc.*,
  No. 17 Civ. 6880 (JPO), Dkt. No. 8 (S.D.N.Y. Oct. 23, 2017) ..................................................4

*Yang v. Ziff Davis, LLC*,
  No. 17 Civ. 6628 (VSB), Dkt. No. 16 (S.D.N.Y. Dec. 28, 2017)...............................................3

**STATUTES**

17 U.S.C. § 107................................................................................................................1, 5, 8

17 U.S.C. § 505.......................................................................................................................2, 8

28 U.S.C. § 1927......................................................................................................................8

## **PRELIMINARY STATEMENT**

Plaintiff Stephen Yang's ("Yang") opposition papers underscore why fees are warranted in this case, and why his counsel, Richard Liebowitz, should have to bear the cost of sanctions. Rather than challenging the Court's findings or explaining why his approach was reasonable, Yang's opposition reads like a marketing piece for the Liebowitz Law Firm, complete with soapbox speeches that imply that photographers should hire the firm because they will reap settlements even in cases where the law does not allow for any recovery. Indeed, the papers admit that the firm sues for unauthorized uses, even if permissible by law, to either make a statement about the state of settled law, or to advocate for a line of licensing that Section 107 of the Copyright Act expressly bars, or both.

This approach shows a misunderstanding of the purpose of the courts, which do not exist to be unwitting participants in Mr. Liebowitz's well-publicized litigation strategy. However, this case in particular involves more than the typical approach in which the firm persuades a plaintiff to sue because a defendant will pay more when outside counsel is involved.[1] Here, Yang's position on liability was utterly meritless, particularly given how many ways the Court found the use to be transformative. A party like defendant Mic Network, Inc. ("Mic") should not have to be the party to bear the cost for helping to underscore the clearly marked boundaries of copyright law: indeed, this is why fee-shifting exists in the Copyright Act. If Yang stopped to consider that the courts administer justice, then Yang's admission that he has forced "scores" of media companies to settle

---

[1] Judge Kaplan noted in a recent opinion that Mr. Liebowitz has filed a "downpour" of copyright infringement cases, including "an average of more than one new case on every day the Court has been open for business" over a roughly three-year period. *See Sands v. Bauer Media Grp. USA, LLC*, No. 17 Civ. 9215 (LAK), 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019). The Opposition does not dispute this fact, boasting about having filed more than 1100 cases in this District and the Eastern District of New York since January 2016 alone. Opp. at 16.

claims over similarly permissible uses, which Yang has apparently used as a basis to try to create a market, *see* Opp. Br. at 1, all but compels that Yang and his law firm should reimburse Mic for standing up and fighting against Yang's dangerous efforts to chill speech.

Yang brought this situation upon himself and should fairly compensate Mic for the time and expense incurred by its counsel in defending against his meritless claim. Moreover, considering the monetary sanctions and disciplinary action ordered against Mr. Liebowitz and/or his clients in the past have not been a sufficient deterrent to his filing of further frivolous litigation, it is critical that Mr. Liebowitz be held responsible as well. Accordingly, for the reasons set forth in its moving brief and reply below, and for the sake of other similarly situated parties who are subjected to litigation over frivolous claims, Mic respectfully requests that the Court grant its Motion for Attorneys' Fees and Sanctions in full.

## **ARGUMENT**

**I.    ATTORNEYS' FEES SHOULD BE GRANTED UNDER 17 U.S.C. § 505**

    **A.    Yang Provides No Basis to Find That His Claim is Anything But Objectively Unreasonable.**

Yang sued over a use of a cropped photograph, in the context of an article about the photograph's subject, for purposes of commenting on the Post piece and the public's reaction to it and to its subject. This was not a "close call," and the Court did not find it to be one. Tellingly, Yang's only response is that because Mic did not dispute the facts pleaded in the Amended Complaint, Mic concedes reasonableness. *See* Opp. at 8-9. This response not only fails to show how the suit was objectively reasonable despite having a preview of the arguments in response to the original Complaint, but it illustrates how objectively unreasonable his litigating positions were. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (2016) (noting that "objective unreasonableness" should not be given undue weight and that objective unreasonableness looks at

2

the party's litigating positions in addition to the claim).[2] Any lawyer with federal experience must know that Mic was constrained to accept the "facts" Yang alleged as true on his motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).

The issue is that even so, under these "facts" – *i.e.*, that Mic used a screenshot of the Post Article which included a portion of the Photograph in an article commenting on the Post Article, the Photograph, and the individual identified therein – early dismissal of Yang's claim was objectively warranted. The fact that Yang had to twist himself into knots to even muster a response echoes the Liebowitz Firm's willful disregard of black-letter copyright law. *Cf. Konangataa v. Am. Broad. Cos., Inc.*, No. 16 Civ. 7382 (LAK), 2017 WL 2684067, at *2 (S.D.N.Y. June 21, 2017) (finding infringement claims alleging use of photograph on commercial websites without the plaintiff's permission were objectively unreasonable because "no reasonable lawyer with any familiarity with the law of copyright could have thought that the [ ] minimal uses, in the context of news reporting and social commentary, . . . was anything but fair") (awarding fees but not sanctions). The willful failure to recognize basic principles of federal law has real consequences, and awarding fees to deter this behavior might possibly cause counsel to reconsider the consequences of a suit before bringing it, particularly as he has not been deterred enough to-date.[3]

---

[2] Yang fails to cite *Kirtsaeng* or any cases following it.
[3] Attempting to bolster the reasonableness of his claim, Yang notes that he has "successfully prosecuted" infringement cases against "scores of other media outlets" who used the Photograph in "much the same manner" as Mic, contending if such claims were frivolous, "other courts would have taken notice by now." Opp. at 1-2 (citing nine cases). Yang's characterization is false. Each of these cases settled before the court had an opportunity to weigh in on the merits of Yang's claims – in seven of these cases, before any responsive pleading was filed, suggesting that Yang's demand was priced just low enough that the defendants opted to pay rather than incur litigation defense costs. *See Yang v. Onion, Inc.*, No. 17 Civ. 5411 (VEC), Dkt. No. 15 (S.D.N.Y. Sept. 27, 2017); *Yang v. Connected Ventures*, No. 17 Civ. 5481 (GBD), Dkt. No. 19 (S.D.N.Y. Oct. 23, 2017); *Yang v. Evolve Media, LLC*, No. 17 Civ. 5529 (AJN), Dkt. No. 14 (S.D.N.Y. Nov. 7, 2017); *Yang v. Ziff Davis, LLC*, No. 17 Civ. 6628 (VSB), Dkt. No. 16 (S.D.N.Y. Dec. 28, 2017); *Yang v. Guardian News & Media LLC*, No. 17 Civ. 6636 (GBD), Dkt No. 14 (S.D.N.Y. Nov. 3, 2017);

Moreover, despite having been educated that his cited authorities are factually distinguishable, Yang serves up the same series of inapt authorities that he cited in his opposition to Mic's motion to dismiss. *Compare* Opp. at 10-11 *with* Dkt. No. 22 at 11-12.[4] The Court has expressly considered and rejected Yang's argument based on these cases, finding that Mic's use is transformative *in three ways* and explaining that the Mic Article in fact comments on the Photograph itself. *See, e.g.*, Order at 5-10. That Yang continues to proffer these cases as "applicable caselaw [*sic*]" that "amply support[s]" his opposition to fair use shows just how unreasonable he is and how baseless it was for him to bring the claim in the first place.

### B.  The Transformative Use of a Copyrighted Work is Decidedly Not Actionable.

The law underlying this case is far from "unsettled" or "novel," as Yang suggests. Opp. at 13. While the Second Circuit might not have had occasion to consider the precise fact pattern presented here, the principles at the core of the Court's decision – particularly, that Mic's incidental use, for purposes of its own commentary and criticism, of a screenshot of the Post Article containing part of the Photograph constitutes a transformative fair use (Order at 5-10) – are deeply engrained in Second Circuit's well-developed body of copyright law. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 215-16 (2d Cir. 2015) ("[C]opying from an original for the purpose of criticism or commentary on the original or provision of information about it, tends most clearly to

---

*Yang v. UPROXX Media, Inc.*, No. 17 Civ. 6880 (JPO), Dkt. No. 8 (S.D.N.Y. Oct. 23, 2017); *Yang v. Someecards, Inc.*, No. 17 Civ. 7405 (JFK), Dkt. No. 17 (S.D.N.Y. Dec. 7, 2017). In the other two, Yang dismissed the case after participation in an early settlement conference. *Yang v. Oath, Inc.*, No. 17 Civ. 6728 (VM), Dkt. No. 27 (S.D.N.Y. Mar. 6, 2018); *Yang v. Hearst*, No. 17 Civ. 7585 (VEC), Dkt. No. 17 (S.D.N.Y. Jan. 16, 2018) (same).

[4] Particularly, Yang cites *Barcroft Media, Ltd. v Coed Media Grp., LLC,* 297 F. Supp. 3d 339 (S.D.N.Y. 2017); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016); *Psihoyos v. Nat'l Examiner*, No. 97 Civ. 7624 (JSM), 1998 WL 336655 (S.D.N.Y. June 22, 1998); *Hirsch v. CBS Broad. Inc.*, No. 17 Civ. 1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017); and *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412 (S.D.N.Y. 2018).

satisfy [the] notion of the 'transformative' purpose involved in the analysis of [the first fair use factor].") (citations omitted); *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 608 (2d Cir. 2006); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998). *See also* 17 U.S.C. § 107 (stating that fair use of a copyrighted work "for purposes such as criticism, comment, [and] news reporting, . . . is not an infringement of copyright").

Yang's claim of novelty is similarly untrue. *Clark v. Transp. Alts., Inc.*, No. 18 Civ. 9985 (VM), 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019), a recent decision that reached the same conclusion based on legally indistinguishable facts, confirms it. *See also* Order at 4, 6-10 (discussing *Clark*). Yang's Opposition makes much of the "advent of social media,"[5] "on-line publishing," and "the internet generally," but this is simply a distinction without a difference, and Yang's cherry-picked quotations from inapposite cases involving issues as afield as privacy law (*see* Opp. at 14) fail to show how the fair use test would apply differently if the use at issue were in print rather than online.

### C. Yang's Claim Admittedly Is Improperly Motivated.

Yang's Opposition confirms that this lawsuit was brought, and maintained, improperly. Indeed, the standard for an "improperly motivated" claim set forth in the Opposition reads like a description of Mr. Liebowitz's business model. *See* Opp. at 15 ("A party is improperly motivated where it asserts claims not because of their inherent merit, but rather because it seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain – in this case, the leveraging of a settlement.") (internal quotation marks and citation omitted). *See McDermott v.*

---

[5] Yang states in his Opposition that Mic took the Photograph from social media (*see, e.g.*, Opp. at 20), but does not allege as much in the Amended Complaint. These references are merely remnants of a prior opposition brief filed by Yang's counsel, albeit on behalf of a different client and in a different case. *See Rudkowski v. Mic Network, Inc.*, No. 17 Civ. 3647 (DAB), Dkt. No. 34 (S.D.N.Y. May 4, 2018).

5

*Monday Monday,* LLC, No. 17 Civ. 9230 (DLC), 2018 WL 1033240, at *3 n. 4 (S.D.N.Y. Feb. 22, 2018) (Mr. Liebowitz's firm "plays a numbers game in which it targets hundreds of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.") (cleaned up); *Konangataa*, 2017 WL 2684067, at *2 (noting "[t]here may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement").

The Liebowitz Firm's characterization of its "wins" is not only a red herring, it is far too laudatory and certainly has no persuasive power against a fee award here.  As a threshold matter, the firm's track record shows that they are not "clearly prepared" to litigate anything to final judgment.  *See* Opp. at 18.[6]  And the reasons for not doing so are clear: in the *two cases* it has taken to trial of the over 1,000 filed, the firm has won a judgment of less than $10,000 in one (with less than $4,000 of the amount attributable to the infringement claim), and less than $1,000 in the other, hardly worth the cost of photocopying exhibits.  *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 379 (S.D.N.Y. 2019); *Otto v. Hearst Commc'ns, Inc.*, No. 17 Civ. 04712 (GHW) (JLC), Dkt. No. 127 (S.D.N.Y. July 24, 2019).[7]

The argument that Mic "could have settled the case for a reasonable amount" is telling. The Liebowitz Firm needs for defendants settle fair-use cases at a bargain-basement price, rather

---

[6] Although he misleadingly suggests otherwise (Opp. at 17), it is the Court that has "accus[ed]" Mr. Liebowitz of being a "copyright troll." *McDermott*, 2018 WL 1033240, at *3. *See also, e.g.*, *Reynolds v. Hearst Commc'ns, Inc.*, No. 17 Civ. 6720 (DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) ("Mr. Liebowitz . . . has been labelled a copyright 'troll.'").

[7] In one of the other cases, for example, the firm defeated a motion to dismiss by relying on facts that it refused to change despite receiving a Rule 11 letter that identified objectively mistaken information pertaining to a DMCA-compliant platform. *Myeress v. BuzzFeed Inc.*, No. 18 Civ. 2365 (VSB), 2019 WL 1004184, at **3-4 (S.D.N.Y. Mar. 1, 2019).

than defend, so that the firm can continue with its rhetoric of calling worthwhile news reporting "shoplifting" and "expropriation." As the Opposition shows, the firm blames its reckless behavior on its dissatisfaction with the law and with Congress, and suggests that if the media is sufficiently demonized for relying on the statutory defense of fair use, a new revenue stream will open up that photographers can pursue if the user relies on the fair use doctrine to proceed to use a work for comment. *See* Opp. at 15-17. This is not simply misguided, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591-92 (1994) ("the law recognizes no derivative market for critical works"), it is dangerous. And this is exactly the type of policy in the Copyright Act that encourages parties to be compensated for advocating proper application of the law in the face of obviously losing positions like Yang's. [8]

### D. An Award of Attorneys' Fees Furthers the Purpose of the Copyright Act.

An award of attorneys' fees in this case is aligned with the goals of compensation and deterrence. Yang's assertion that an award of attorneys' fees would only encourage "commercial publishers" – including ones like Mic, which are hardly corporate behemoths – to "expropriate" or "shoplift" composite screenshots of newsworthy content (Opp. at 20) clearly has no relevance here, where no infringement was even arguable. In fact, these publishers will be chilled from engaging in the very types of news reporting and commentary that the Copyright Act supports if future plaintiffs may file similar lawsuits with impunity.

Yang gets the mechanics and policy underlying the Copyright Act backward. An award of attorneys' fees will not deter photographers from pursuing legitimate copyright claims. *See* Opp. at 20-21. Rather, it will deter the strategy Yang and his counsel advocate here – *i.e.*, filing lawsuits

---

[8] Yang's apparent concern about the infringement of others' works also provides no justification for maintaining an objectively unreasonable claim. *See* Opp. at 20 (noting "media organizations such as the New York Post" may be injured by commercial publishers expropriating screenshots).

7

premised on bare-bones allegations, regardless of whether a defense such as fair use plainly defeats the claim, to extract what they deem to be "reasonable" nuisance settlements from corporate defendants that are cheaper than the costs of litigating even preliminary motion practice and discovery.[9] *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006) (Preska, J.) (fees award is "crucial [ ], so as to deter th[e] plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs they can score big if they win and that there will be no adverse consequences if they lose").

Yang's assertion that "there is no need to compensate" Mic for engaging in motion practice because it "could have settled the case" (Opp. at 21) only underscores the need to shift attorneys' fees here, so as to ensure that future defendants armed with an established defense do not feel constrained to pay a ransom to the plaintiff instead of pursuing their defense. Indeed, Section 505 is designed to balance out such perverse incentives and even the playing field for defendants who make the kinds of transformative fair uses of copyrighted works that the Copyright Act so clearly permits and favors. *See Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 Civ. 7128 (BJS), 2003 WL 1701904, at *5 (S.D.N.Y. Mar. 31, 2003).

## II.     MR. LIEBOWITZ SHOULD BE SANCTIONED UNDER 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWERS

Bad faith in this case is readily apparent. Mr. Liebowitz's conduct on behalf of Yang was unreasonable, vexatious, and calculated to multiply the proceedings of this case for an improper purpose, namely, extraction of money for a use that inherently carries no liability as part of the firm's admitted hope to use litigation to expunge Section 107 from the Copyright Act as it applies

---

[9] This case is not the only one in which Yang and his counsel have advocated this strategy. All of the cases Yang cites as examples of his "success[es]" (Opp. at 1-2) were voluntarily dismissed either before the answer was filed, or shortly after, suggesting the defendants determined the cost of litigation was not worth defending.

to photographs. As a result of such conduct, Mic has needlessly incurred over $18,671.50 in attorneys' fees *and counting*. Mr. Liebowitz's misconduct should not be condoned. This Court should appropriately sanction him.[10]

Unable to dispute the occurrence of the specific acts making up the pattern of sanctionable conduct, Mr. Liebowitz instead focuses heavily on instances of sanctionable conduct in *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir. 2000), claiming his own "pales in comparison." Opp. at 23. But pointing to another's bad-faith behavior does not excuse his own willful blindness to – if not deliberate disregard of – black-letter principles of copyright law and his relentless insistence on perpetuating cases where no authority would support the Liebowitz's Firm's hope that all uses of photographs are infringing.[11]

Here, Mic does not contend that Yang's counsel should be sanctioned merely because he mistreated the lawyers. Rather, sanctions should be awarded primarily because counsel's litigation strategy centered on efforts to mislead the Court to advance clearly meritless claims, and to burden both the Court and Mic with bad-faith, time-wasting filings in the short time that Yang's claims survived. As Yang's counsel is aware, the proposition that continuing to pursue a meritless claim is sanctionable is well-settled. *See, e.g., Gollomp v. Spitzer*, 568 F.3d 355, 369-72 (2d Cir. 2009).

---

[10] Notably, in cases where the Court declined to impose sanctions against Mr. Liebowitz, it has warned that it would not be so generous the next time he exhibited such unreasonable conduct. *See, e.g.*, *McDermott*, 2018 WL 1033240, at *3; *Janik v. SMG Media, Inc.*, No. 16 Civ. 7308 (JGK) (AJP), 2018 WL 345111, at *16 (S.D.N.Y. Jan. 10, 2018).

[11] Regardless, *Revson* is inapposite for two reasons. First, Mr. Liebowitz mischaracterizes the case, citing the district court's description of the attorney's conduct (*id.* at 77-78), even though the Second Circuit found the conduct to be less serious than the district court's findings suggested (*id.* at 79-82). Second, the alleged misconduct in *Revson* amounted to allegedly "offensive and overly aggressive" communications and tactics directed toward opposing counsel, not the Court, which likely has had to endure other "shoot first, ask questions later" tactics from the Liebowitz firm.

### III. THE AMOUNT OF FEES SOUGHT IS NOT "GROSSLY EXCESSIVE"

Yang makes a perfunctory attempt to challenge the amount of attorneys' fees sought, asserting without authority or logical explanation that the attorneys' fees that Mic reasonably, but needlessly, incurred to defend itself against a claim that should never have been brought are "grossly excessive." Opp. at 24-25. Yang's attempt to avoid or reduce the very reasonable and well-substantiated amount of attorneys' fees sought should be wholly rejected.

As for hourly rates, Yang appears only to dispute that of Ms. Lackman (*id.* at 24-25), thus conceding through silence that Ms. Edelstein and Mr. Long's respective hourly rates are reasonable. *See* Mot. at 18-19; *see also In re UBS AG Secs. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (a party "concedes through silence" arguments by its opponent that it fails to address), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). Perhaps frustrated that a court recently found Mr. Liebowitz, a 2015 law school graduate who has been sanctioned repeatedly by the courts over a cookie-cutter practice, to not be worth a $450 hourly rate, *Mantel v. Smash.com, Inc.*, No. 19 Civ. 6113 (FPG), Dkt. No. 15 at pp. 7-9 (W.D.N.Y. Oct. 17, 2019), Yang argues only, baldly, that the rate of a "sophisticated copyright practitioner" with 16 years of relevant experience is excessive and should be reduced to the rate of a fifth-year associate whose rate he does not challenge. *Compare* Opp. at 24-25 *with* Mot. at 17-18 (collecting cases).

The Court should therefore award the full amount of attorneys' fees requested, plus those incurred in connection with the instant motion and Yang's frivolous motion for reconsideration.

### CONCLUSION

In light of the policies of the Copyright Act and the need for deterrence, Mic should be compensated for its attorneys' fees in full. Accordingly, Mic respectfully requests that the Court grant its Motion for Attorneys' Fees and Sanctions.

| | |
|---|---|
| Dated: New York, New York<br>November 13, 2019 | Respectfully submitted,<br><br>MITCHELL SILBERBERG & KNUPP LLP<br><br>By: <u>s/ Eleanor M. Lackman</u><br>Eleanor M. Lackman<br>Marissa B. Lewis<br>437 Madison Avenue, 25th Floor<br>New York, New York 10022<br>Tel.: (212) 509-3900<br>Fax: (212) 509-7239<br>eml@msk.com<br><br>*Attorneys for Defendant Mic Network, Inc.* |

11